Denton v. James.

No. 23,191.

FRANK W. DENTON, *Plaintiff*, v. ISABELLE JAMES, *Appellee and Appellant*, and SARAH L. DENTON, Intervener, *Appellant and Appellee*.

SYLLABUS BY THE COURT.

1. MINORS—*Adoption of Minor Child—Persons Entitled to Notice of Hearing.* A female child, whose sole surviving parent was her father, was placed, by order of court made in a habeas corpus proceeding, in the custody of her maternal grandmother from September 1 to June 1 of each year, and in the custody of her paternal grandmother the remainder of the year. In the month of June, and while she was in lawful custody of the child, the paternal grandmother adopted her. The child had no guardian such as the statute relating to guardian and ward recognizes, and the father appeared and consented to the adoption. *Held*, it was not essential to jurisdiction of the probate court sanctioning the adoption that the maternal grandmother should be notified, or should appear or consent.

2. SAME—*Parents are Natural Guardians—Welfare of Child.* By statute the father and mother are natural guardians of their child. If one die, natural guardianship devolves on the other. The other then has the right to custody of the child, and the welfare of the child is best subserved by leaving it with its natural guardian until it is demonstrated that the parent is unfit to discharge the duties which are correlative to his right.

3. SAME—*Rights of Parent by Adoption to Custody of Minor.* The domestic relation of parent and child created by adoption confers the same right to custody as the natural relation.

4. SAME—*Education of the Child.* A parent, including a parent by adoption, has the right to control the education of the child.

5. SAME—*Religious Training of the Child.* Aside from teachings subversive of morality and decency, and some others equally obnoxious, the courts have no authority over that part of a child's training which consists in religious discipline, and in a dispute relating to custody, religious views afford no ground for depriving a parent of custody who is otherwise qualified.

6. SAME. In this instance the child's mother was a Roman Catholic, and the father agreed the child should be reared in its mother's religious faith. The maternal grandmother is a Roman Catholic, and the mother by adoption is not. *Held*, the facts stated afford no ground for depriving the mother by adoption of custody of the child during the school year.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed November 6, 1920. Reversed.

*Thomas C. Wilson, Kos Harris,* and *V. Harris,* all of Wichita, for the appellant.

*S. B. Amidon, S. A. Buckland, H. W. Hart, Glenn Porter, George McGill,* all of Wichita, and *J. G. Waters,* of Topeka, for the appellee.

The opinion of the court was delivered by

BURCH, J.: The appeal is taken from an order of the district court disposing of custody of a child.

Caroline Denton, the child of Frank W. and Mary B. Denton, was born in March, 1910. In January, 1919, Mary B. Denton died, and the child was taken by Mary B. Denton's mother, Isabelle James. Afterwards Frank W. Denton instituted a proceeding in habeas corpus to obtain custody of the child, which resulted in the following order made in December, 1919:

"That the custody of the said child, Caroline Denton, at this time, be given to the defendant and respondent, Isabelle James, from this date until the first day of June, 1920.

"That on June 1, 1920, Mrs. Sallie Denton, the mother of the plaintiff, Frank W. Denton, be entitled to the custody of the said child until September 1, 1920, and that on September 1, 1920, the said child shall be returned to the custody of the said defendant and respondent, who shall have such custody of said child until June 1, 1921, at which date the custody of said child shall be given to Mrs. Sallie Denton until the first day of September, 1921.

"It is further ordered that the disposition and custody of the said child, from year to year, for the months above set forth, be continued.

"It is further ordered that on each succeeding Saturday from this date, so long as this order may continue in force, and while the child is in the custody of Mrs. Isabelle James, and in the city of Wichita, Kan., the said child shall be delivered by said Isabelle James into the custody of the said Mrs. Sallie Denton, at the residence of Mrs. James, in the city of Wichita, Kan., when called for, who shall return the said child to the defendant and respondent, Isabelle James, by nine o'clock p. m. on each Saturday.

"It is further ordered, adjudged and decreed that between the first day of June and the first day of September of each year, when the care and custody is given to the said Sarah L. Denton, and while the child is in Wichita, Kan., the said defendant, Isabelle James, shall have permission to see said child and have her custody on Saturday of each week between the hours of 9:30 a. m. and 5 p. m.

"And it is further ordered that during the Christmas and Easter holidays, the said child shall spend one-half of her time with Mrs. Isabelle James, and one-half of her time with Mrs. Sallie Denton.

Denton v. James.

"It is further ordered that during the time that said Caroline Denton is with Mrs. Sallie Denton, the father of the said child, Frank W. Denton, may visit the said child and enjoy her society, and during the said time the child is with Mrs. Sallie Denton, the said father may have said child in his possession, but under the control of Mrs. Sallie Denton, and shall not remove her from the state of Kansas, returning the child to Mrs. Sallie Denton in due time and season, so that the child may be delivered to her to be delivered to Mrs. Isabelle James, as herein provided."

The parties acquiesced in the order, and custody of the child was shared according to its terms. On June 18, 1920, while the child was in lawful custody of Sallie Denton by virtue of the order, she adopted it by formal proceedings in the probate court. On September 1, 1920, Sallie Denton, exercising the right of parent by adoption, did not return the child to Isabelle James. Isabelle James applied to the district court for an order directing the sheriff to seize the child and return it to her. The application was made under the title of the habeas corpus proceeding. Sally Denton intervened, and issues were framed between herself and Isabelle James covering the whole subject of welfare of the child and right to its custody. At the conclusion of the hearing the court summed up the case as follows:

"I am of the opinion still that for the best interests of this child it should go to Mrs. James for nine months, for the best interests of the child, and because it has been educated in the same line; and that for the other three months it should go to Mrs. Denton. But the only question now is as to the effect of these proceedings in the probate court. I would not consider that either of these ladies were improper, but I consider that under all conditions the best interests of the child would be subserved by giving it to Mrs. James. If Mrs. James wasn't in the case, Mrs. Denton would be an eminently proper person, and the child would be fortunate to be adopted by her. I am choosing under the circumstances what I think would be best for the child.

"By Mr. Wilson: Don't you think Mrs. Denton could educate that child as well as Mrs. James?

"By the court: Yes.

"By Mr. Wilson: Then, why would it be—

"By the court: That is, if the child hadn't been started in one line. The mother wanted the child educated in a certain way, and the father agreed to it, and that should be carried out. Of course, if the child had been given to Mrs. Denton early, and a certain line of education proceeded—

"(Further argument of counsel.)

"By the court: The adoption proceedings are legal, at least so far as making the child the heir of Mrs. Denton. . . . I will announce my decision as soon as I can reach it."

The matters which the court seemed reticent about stating in plain terms were these: The child's mother was a Roman Catholic. The father agreed with the mother that the child should be reared in the mother's religious faith. Isabelle James is a Roman Catholic, and Sallie Denton is not. The formal judgment recited that it was for the best interest of the child the order made in the habeas corpus preceeding should be carried out, and that validity of the adoption proceeding could not be collaterally attacked.

If the probate court had jurisdiction to make the order of adoption, the propriety of the order cannot be questioned in this proceeding, and the child is the child of Sallie Denton. Isabelle James contends the probate court proceeding was void for lack of jurisdiction, because she was not required to appear, and was not notified or given opportunity to present her claim to custody of the child. The statute relating to adoption reads as follows:

"Any person may appear in the probate court of the county of his or her residence and offer to adopt any minor child or children as his or her own. Thereupon the court shall investigate the matter, and shall require that the minor appear or be brought before the court, and shall require that such of the minor's parents as are living in the state, and the guardian (if any), appear also in court, without expense to the public; and if either or both parents of such minor are nonresidents of the state, there shall be filed an affidavit made by all such nonresident parents or guardian setting forth that they are parents of such minors, and that they consent to such adoption by the applicant, and that such consent is free and voluntary; and if the probate court shall find that the minor and the living parents of such minor and the guardian (if any) consent freely and voluntarily to such adoption, the said court shall record its proceedings in the journal, declaring each such minor child to be the child and heir of such person so adopting such minor; and then and thereafter such person so adopting such minor shall be entitled to exercise any and all the rights of a parent, and be subject to all the liabilities of that relation. If the probate court on investigation finds that the person offering to adopt such minor child is unfit, or financially unable, properly to assume the relation of parent to such minor, such court shall refuse to permit such adoption to be made. If either parent is alleged to be dead, proof of death shall be made by affidavit. If the parents of such minor child shall have been divorced, the consent of the parent to whom custody of such child shall have been awarded shall be

Denton v. James.

necessary to authorize an order of adoption, but the consent of the other parent, though desirable, shall not be necessary. . . .

"Minor children adopted as aforesaid shall assume the surname of the person by whom they are adopted, and shall be entitled to the same rights of person and property as children or heirs-at-law of the person thus adopting them." (Gen. Stat. 1915, §§ 6362, 6363.)

The statute does not recognize notice at all. It requires appearance. Under circumstances not now material, certain appearances are dispensed with. In this instance presence of the following persons in court was necessary: Caroline Denton, the child; Frank W. Denton, the child's father; the child's guardian, if any; and Sallie Denton, the person offering to adopt. Did Caroline Denton have a guardian, other than her natural guardian, within the meaning of the statute, whose appearance was indispensable to her adoption?

The legislature has dealt with the subject of guardians as fully as it has dealt with the subject of adoption. The two statutes might well be read as one, under the general title, "Welfare of Minor Children," and the presumption is that when the word "guardian" was used in the adoption statute it meant the kind of guardian which had been the subject of legislative thought. There are three kinds of guardians, and no more: natural guardians, testamentary guardians, and probate guardians. The father and mother are natural guardians, and if either die or become incapable of acting, natural guardianship devolves on the other. One parent who survives the other may by will appoint a guardian for his child, and the appointee has the same power and performs the same duties regarding the person and estate of the child as a natural guardian. If no testamentary guardian has been appointed, or if living parents be disqualified to act as guardians, the probate court may appoint one (Gen. Stat. 1915, §§ 5041, 5042). Section 5049 of the statutes reads as follows:

"Guardians of the persons of minors have the same power and control over them that parents would have, if living."

Guardians of property belong to the same classes. Natural guardians are guardians of property provided by themselves. Probate guardians must be appointed for other property, and testamentary guardians for estates may be appointed in the same way as for persons. District courts have no power to

appoint guardians, and supervision and control of the conduct of guardians is vested in the probate court. In this instance we are not concerned with property guardianship.

Turning to the adoption statute, it will be observed that nobody is required to appear at an adoption proceeding who is not required to consent to it, and the reason for appearance must be found in the reason for consent. It seems quite clear that the consent of parents is required because, with the adoption of their child by another, their parenthood comes to an end. The child becomes the child of the person adopting it. A guardian is one whom the law substitutes for parents. He stands *in loco parentis*, and is sometimes referred to as temporary parent. The equivalent of the parental status which a guardian enjoys by virtue of the express terms of the statute is terminated by adoption, and so he must appear and consent. A mere custodian of an infant bears no domestic relationship to the child, and it is a clear misnomer to speak of a court custodian as having any right or claim to custody of the child. He is merely a court agent, who executes the specific order of the court placing the child in his custody. The only right involved is the right of the child to repose in the designated custody until some court having lawful authority sees fit to make some other arrangement; and consent of a naked custodian, who may be displaced at any time, may be dispensed with. In the present instance it would be strange if the child could not enjoy some splendid opportunity to become the child and heir of another unless two court custodians gave their consent. Therefore, the legislature stopped with the appearance and consent of parents, and of the guardian if any, and the court is not authorized to add to the statutory requirements.

The adoption of Caroline Denton by Sallie Denton carried with it every feature of the domestic relation of parent and child except natural birth (*Dreyer v. Schrick,* 105 Kan. 495, 498, 185 Pac. 30), and Sallie Denton was entitled to custody of the child precisely as if she were a natural parent. Any court will say that the criterion of parental right to custody of a child is welfare of the child. The criterion, however, is not always judiciously applied. Sometimes it is declared that the rearing of children is a function which the state delegates to parents, and which it may resume at will, for its welfare,

Denton v. James.

through welfare of the child. The rearing of children is not in fact a function delegated by the state to the citizen, any more than the begetting of children is a delegated state function, and the theory of government recognized by the declaration is responsible for absolutism in its most tyrannical form. The theory is expressly repudiated by the first two sections of the bill of rights of this state:

"1. All men are possessed of equal and inalienable natural rights, among which are life, liberty, and the pursuit of happiness.

"2. All political power is inherent in the people, and all free governments are founded on their authority, and are instituted for their equal protection and benefit." (Gen. Stat. 1915, §§ 105, 106.)

Man has no higher right or interest or happiness than that for which the words family and home stand. Very often it is said, with a touch of derision, that a child is not a chattel, and a parent has no property in his child giving him right to custody—which is very true. The interest which a parent has in the nurture of his own offspring, and in nearness to them for that purpose, lies in a different plane from that occupied by property; it transcends property. On the child's side, it has no higher welfare than to be reared by its parents. The state has no higher welfare than to have children reared by their parents, and free government is instituted for the protection and benefit of parenthood as one of the natural rights which the citizen possesses. Acting on these principles, this court holds that welfare of a child is best subserved by leaving it with its natural guardian until it is demonstrated that the parent is unfit to discharge the duties which are correlative to his right. Then, and not until then, does his right yield. The latest decision on the subject was made in March of this year, in the case of *Crews v. Sheldon,* 106 Kan. 438, 186 Pac. 498. Previous decisions are collated in the opinion.

It would be idle to debate the fitness of Sallie Denton to have custody of the child in controversy, as its adopted mother. The district court, the same judge presiding, has twice given her custody of the child for three months of the year, and the remarks of the court, in summing up the case, make its judgment respecting the matter clear. In the brief for Isabelle James it is said there was no evidence relating to the fitness of Sallie Denton to have custody of the child. She already had the judg-

ment of the district court on the subject, and she produced a recent order of another court having full jurisdiction over the matter of welfare of the child, making it her child. That was quite sufficient until lack of qualification was fully proved by whoever questioned it.

Having all the rights of a natural parent, Sallie Denton has the right to control the education of the child, and the finding of the district court that it was for the best interest of the child Isabelle James should have custody during the school period of each year, was contrary to law. Section 7 of the bill of rights of this state reads as follows:

"The right to worship God according to the dictates of conscience shall never be infringed; nor shall any person be compelled to attend or support any form of worship; nor shall any control of or interference with the rights of conscience be permitted, nor any preference be given by law to any religious establishment or mode of worship. . . ." (Gen. Stat. 1915, § 111.)

In the case of *Watson v. Jones*, 80 U. S. 679, the supreme court of the United States enunciated a principle which is as applicable here as it was in the controversy under decision:

"In this country the full and free right to entertain any religious belief, to practice any religious principle, and to teach any religious doctrine which does not violate the laws of morality and property, and which does not infringe personal rights, is conceded to all. The law knows no heresy, and is committed to the support of no dogma." (p. 728.)

Aside from limitations of the general character indicated the courts have no authority over that part of a child's training which consists in religious discipline, and in a dispute relating to custody religious views afford no ground for depriving a parent of custody who is otherwise qualified. The agreement of the child's father and mother that the child should be reared in the Catholic faith was a commendable compromise between two natural guardians who, under the statute of this state, had equal authority. On the death of the mother, the father's right to educate his child became paramount, and the agreement was merely persuasive upon him. That right is now vested in Sallie Denton. Authorities on the subject of parental right to control religious education of a child are collated in an article in 29 Harvard Law Review, at page 485 (March, 1916). Because of the settled views of this court concerning the nature of the parental relation, and the rights flow-

ing therefrom, the question of religion cannot be regarded as entering into this case. It is conceivable that, on change in custody of a child of peculiar temperament, ill-considered proselyting might be so begun and carried on as to destroy completely the foundation of all faith, and lead to positive immorality. . It will be time enough to deal with such a case when it arises.

A motion by Isabelle James to dismiss the appeal is denied, her cross-appeal is without merit, and the judgment of the district court is reversed. The cause is remanded to the district court with direction to enter judgment awarding custody of the child to Sallie Denton as its parent by adoption, and to issue an order requiring the sheriff to deliver possession of the child to her.