No. 45,252

In the Matter of the Adoption of RONALD VINCENT NELSON, a Minor (DORIS JUNE WINTERS and DAVID NOBLE WINTERS, *Appellees*, v. JAMES PAUL NELSON, *Appellant*).

(451 P. 2d 173)

Opinion filed March 8, 1969.

*Lawrence E. Christenson, Marion P. Mathews,* and *W. R. Mathews,* all of Winfield, on the brief for the appellant.

*Earle N. Wright* and *Ted M. Templar,* both of Arkansas City, were on the brief for the appellees.

The opinion of the court was delivered by

HARMAN, C.: This is an adoption proceeding. The principal, if not the only, question involves the necessity of the natural father's consent to the adoption.

The child in question, Ronald Vincent Nelson, was born in wedlock at Los Angeles, California, June 19, 1964, the son of Doris Ann

Nelson and James Paul Nelson. At some time thereafter the mother came to Kansas with the child. On November 30, 1964, the appellees, Doris June Winters and David Noble Winters, obtained custody of the child from its mother who at the same time executed her written consent to its adoption by the Winters. The child has since remained in the custody of the Winters at Arkansas City, Kansas. In January, 1966, in California, the father secured a divorce from the mother. The divorce decree contained no order respecting the child inasmuch as it was not within the court's jurisdiction.

On May 4, 1966, appellees filed in the probate court of Cowley county, Kansas, their petition to adopt the child, attaching thereto the mother's written consent to the adoption. In their petition they made the following allegation respecting the father:

"3. That the father, James Paul Nelson, abandoned the mother and child prior to birth of the child and has never assumed parental responsibility towards the child, and his last known address was 4757 Inlay Avenue, Culver City, California."

Thereafter the father filed his answer in the probate court reciting his version of the marital difficulties he had had with his wife, the mother of Ronald Vincent, and his explanation as to why he had not contributed to their support. He objected to the adoption and requested custody of the child.

September 8, 1966, the probate court heard the matter and denied the adoption, finding the father had not failed for two consecutive years to support the child and that his consent was essential to the adoption. The probate court made no order with respect to custody.

Appellees promptly appealed the denial of their adoption petition to the district court of Cowley county, Kansas. Meanwhile, they declined to turn over custody of the child to the father. The father then filed in the district court of Cowley county his petition for a writ of habeas corpus in which he sought the child's custody. This latter action was heard by a judge *pro tem* who on November 30, 1966, ruled against the father.

Eventually the appeal in the adoption proceeding was heard in the district court, and on September 22, 1967, it granted the adoption by appellees of Ronald Vincent Nelson. The father has appealed from that order to this court.

K. S. A. 59-2102, provides in pertinent part:

"Before any minor child is adopted, consent must be given to such adoption
"(1) by the living parents of a legitimate child or
"(2) by the mother of an illegitimate child or

"(3) by one of the parents if the other has failed or refused to assume the duties of a parent for two consecutive years or is incapable of giving such consent or

"(4) by the legal guardian of the person of the child if both parents are dead or if they have failed or refused to assume the duties of parents for two consecutive years, or

"(5) by the state department of social welfare, a person, or by the executive head of an agency or association, where the rights of the parents have been legally terminated and custody of the child has been legally vested in such person, department, agency or association with authority to consent to the adoption of said child.

". . . Consent in all cases shall be in writing, acknowledged before an officer authorized by law to take acknowledgments."

As the basis for its order of adoption the trial court made the following findings of fact and conclusions of law:

"THE COURT FURTHER finds that the natural mother of said child, Doris Ann Nelson, did, by written instrument, duly signed, and acknowledged, freely and voluntarily consent to the adoption of said minor child by the petitioners; that James Paul Nelson, natural father of said child, contributed nothing toward the support of the mother of said child or to said child from November, 1963, to September 12, 1966; that the said child is eligible for adoption by the petitioners without the consent of the natural father and that final order and decree of adoption should be entered."

The father's parental rights have never been terminated and he has never consented to the adoption; hence the issue is whether, under the facts, his consent to the adoption became unnecessary for failure and refusal to assume the duties of a parent for two consecutive years under K. S. A. 59-2102 (3), this being the premise of both the petition for adoption and the trial court's order granting it.

In *In re Sharp,* 197 Kan. 502, 419 P. 2d 812, this court construed the statute in question and fixed the focal point of the two year period of default as follows:

"The provisions of K. S. A. 59-2102 (3) are construed, and the term 'two consecutive years' as used therein is held to refer to the period next preceding the filing of a petition for adoption." (Syl. ¶ 3.)

Thus it is requisite that, before his consent becomes unnecessary the father must have failed to assume parental duties two years prior to the filing of the petition for adoption. At the time the petition herein was filed (May 4, 1966), the child lacked about seven weeks of being two years old, having been born June 19, 1964.

Appellant asserts he could not have been delinquent toward the

child for two years before the filing of the petition for adoption because the child was not yet two years of age when the petition was filed.

Appellees contend the term *child* as contemplated in our adoption statutes in determining a father's parental duty should be construed to include an unborn child. They argue a father owes a duty of support to the child during the period of gestation, commencing at the time of conception, and that here the father abandoned the mother from November, 1963, during her pregnancy, and therefore failed to assume parental responsibility for more than two years prior to the filing of the petition for adoption.

The predicament appears to call for a resolution of the meaning of the term *child* as contemplated in the adoption statute in connection with paternal duty. Our research and that of resourceful counsel has revealed little, if any, precedent that is helpful.

K. S. A. 77-201 provides:

"In the construction of the statutes of this state the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the statute:

. . . . . . . . . . . . . .

"*Second.* Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such peculiar and appropriate meaning."

In common parlance we think the term *child* is generally understood to mean a young person between infancy and youth. It is customarily used to refer to an individual in being as distinguished from one not yet born, as a fetus which has no existence of its own apart from the mother to which it is attached. We do not ordinarily use the term *child* to mean an unborn child. When we intend to indicate the latter we couple the noun with the descriptive adjective. Having due regard to the context in which the term is used in the statute, and the possible difficulty of determination, we think the legislature intended this plain, ordinary meaning—a living child who could be the subject of measurable paternal attention. If anything further was intended the lawmakers could easily have said so. In construing this portion of the statute we have heretofore held that parental duty goes further than mere support (*In re Waters,* 195 Kan. 614, 408 P. 2d 590; *In re Sharp,* supra). We hold then that the period of gestation of a child may not be included in computing the two year period of failure or refusal to assume

parental duties, so as to make a defaulting father's consent to adoption unnecessary under K. S. A. 59-2102 (3).

Appellees argue the trial court's order granting the adoption should be upheld because in the habeas corpus action the father was found to be unfit to have the child's custody. Appealing as this contention may be, it cannot be upheld under our statutory law. Custody and adoption are separate proceedings. In the latter the statutory requirements must be clearly shown to warrant the permanent severance of parental ties. In *In re Sharp*, supra, we held this:

"Under K. S. A. 59-2102 the consent of natural parents to the adoption of a legitimate child is specifically required unless the case falls within one of the enumerated exceptions. The facts warranting an exception as prescribed by the statute must be clearly proven before the child can be adopted without consent of the natural parent." (Syl. ¶ 2.)

No matter what the parent may have done, or what his character is, if this is not named in the statute as grounds for dispensing with his consent, then the child cannot be adopted without the parent's consent. The court must always first determine if statutory grounds for adoption exist. In *In re Marsolf*, 200 Kan. 128, 434 P. 2d 1010, we stated:

"The consent by the natural parents to the adoption of their child, where required by statute, is regarded as an essential requisite to jurisdiction on the part of the court to render a valid decree of adoption." (Syl. ¶ 4.)

Here consent of both parents was required. The father did not give consent and the trial court was without jurisdiction to grant the adoption. Its judgment must be and is reversed.

APPROVED BY THE COURT.