No. 47,660

In the Matter of the Adoption of TRACY DAWN HERBST, a Minor (DEBORAH ANN HERBST, *Appellee*, v. ANNETTA HERBST COMPTON, *Appellant*).

(535 P. 2d 437)

*Opinion*
filed May 10, 1975.

*Robert L. Serra*, of Kansas City, argued the cause and was on the brief for the appellant.

*Gary L. Nafziger*, of Oskaloosa, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an appeal from a district court order of adoption of a child granted without the consent of the natural mother.

William and Annetta Herbst were married in 1968. Annetta had a child, Lesa, by a prior marriage. On January 1, 1970, Tracy Dawn, the subject of this proceeding, was born to William and Annetta.

The Herbsts made their home in Kansas City, Kansas. Soon after Tracy's birth Annetta commenced working as a bartender at the Chatterbox Club, a private club, in Kansas City and William became employed by the Rock Island railroad. Marital difficulties arose between the couple and they separated in August, 1970. Annetta kept Tracy, leaving her with babysitters and with the paternal grandmother, Marie Herbst. In September Annetta informed William she did not have a babysitter and would have to take the child to the club with her. Over William's objection she took Tracy to the club. Later William took the child and she was thereafter cared for by the paternal grandmother until William's present spouse assumed her care.

In January, 1971, William filed for divorce from Annetta in the district court of Wyandotte county on the ground of gross neglect of duty and incompatibility. Annetta was served with summons

and with copy of the petition but she did not appear in the action and on March 4, 1971, William was granted a divorce and the custody of Tracy. The divorce decree was silent as to visitation rights of Annetta. Annetta learned of the divorce through a friend the day after it was granted.

On May 14, 1971, Annetta married Michael Compton. On December 16, 1972, William married Deborah Ann, his present wife, who is the petitioner for adoption herein. Deborah started helping the paternal grandmother take care of Tracy during the summer of 1972 when she and William became engaged. Since their marriage Deborah and William have lived at the former home of the paternal grandmother near McLouth, Kansas, and Deborah had taken care of Tracy up to the time of the adoption hearing.

On December 20, 1973, Deborah Herbst filed a petition in the probate court of Jefferson county for the adoption of Tracy. William consented to the adoption. Annetta did not. In lieu of her consent the petition alleged she had failed to assume the duty of a parent for two consecutive years. The probate court heard the matter and denied the adoption. Deborah appealed this decision to the district court which, after *de novo* hearing, granted the petition and ordered Tracy's adoption by Deborah. Annetta has now brought the matter here.

K. S. A. 1974 Supp. 59-2102 provides in pertinent part:

"Before any minor child is adopted, consent must be given to such adoption.
"(1) by the living parents of a legitimate child or

. . . . . . . . . .

"(3) by one of the parents if the other has failed or refused to assume the duties of a parent for two (2) consecutive years or is incapable of giving such consent or . . ."

Upon appeal Annetta contends the evidence presented to the trial court was insufficient to support its finding she had failed to assume the duties of a parent for two consecutive years preceding the filing of the adoption petition, thus rendering her consent unnecessary. The petition was filed December 20, 1973. The trial court heard controverted evidence as to just what attention appellant Annetta had paid to Tracy during the crucial two year period while the little girl was being cared for by her father, her paternal grandmother and her stepmother, appellee Deborah. In a comprehensive memorandum opinion it discussed the evidence and made extensive findings of fact. The court specifically rejected much of appellant's testimony and other evidence offered by her, choosing

instead to believe the version of events related by appellee's witnesses, particularly the paternal grandmother. Essentially it found appellant had not visited the child during 1971 as asserted by appellant, had made no effort to do so, and had visited her only three times in 1972, the last visit being in June or July. Appellant always had someone with her and was never alone with Tracy. During these visits Tracy did not know who appellant was. During this last visit appellant's daughter Lesa, whom appellant had brought, announced that her father and Tracy's father was the same man and Tracy did not have Herbst blood. The clear implication is that this information had come from appellant. When these statements were made the paternal grandmother told appellant to leave and not return. Appellant made no visits thereafter. She did not leave her telephone number or place of residence with the Herbsts so that she could be contacted in case of emergency. Previously there had been some animosity between appellant and the Herbst family, engendered in part at least by numerous telephone calls by appellant made to the grandmother during early morning hours in which appellant used abusive language and threatened her ex-husband William but never inquired about Tracy. During the entire two year period the only gift furnished by appellant for Tracy was one doll. Appellant did not send any other type of remembrance, message or card either at Christmas, on Tracy's birthday anniversary or at any other time.

In its memorandum opinion the trial court also noted the fact appellant was familiar with divorce proceedings. She had secured custody of her child Lesa in divorce from her first husband and knew about matters relating to custody, child support and payment of attorney fees by the husband. Appellant made no effort of any kind to secure visitation rights with Tracy through the Wyandotte county district court or otherwise. She sought visitation rights only in the adoption proceeding after it had been commenced.

Whether an individual has failed to assume parental duties for two consecutive years is a fact question to be determined by the trier of the fact (*In re Sharp,* 197 Kan. 502, 419 P. 2d 812). Appellant contends her three visits during 1972 showed sufficient assumption of the duties of a parent so that under 59-2102 her consent was requisite to Tracy's adoption. Since the adoption of that statute in its present form this court has had occasion to consider that which constitutes failure or refusal to assume parental duties within

its meaning. See, *e. g.*, *In re Waters*, 195 Kan. 614, 408 P. 2d 590, and *In re Sharp*, supra. The exercise of the right of visitation is only one of several factors to be considered in making such determination. *Sharp*, as here, involved an adoption initiated by a stepmother to which the natural mother, who did not have custody and from whom support money was not required or expected, had not consented. The latter visited the child one time during the critical two year period. We held there that parental duties include the natural and moral duty to show affection, care and interest toward the child and this duty was not discharged by a single visit. In reaching this conclusion we noted the similarity in language of the English adoption act to that of our own. In England the court may dispense with the consent of a parent who has persistently failed, without reasonable cause, to discharge the obligations of a parent (Adoption Act, 1958, 7 Eliz. 2, ch. 5). Respecting construction of that act we said approvingly in *Sharp:*

"In the case of *In re P. (Infants)*, [1962], 1 Weekly L. R. 1296 (C. D.), the term 'obligations of a parent' was construed to include not only the common-law or statutory duty to maintain a child in the financial or economic sense but also to include *the natural and moral duty of a parent to show affection, care and interest toward his child.* The court held that the natural mother's consent was unnecessary, notwithstanding the fact she had occasionally sent gifts, contributed some financial support, and had visited her children on three occasions during the three years next preceding the filing of the application for adoption." (p. 507.)

We further said:

". . . it is difficult to imagine that a natural mother, although without the privilege of full custody, would be unmindful of important occasions in the lives of her children, and that she would be content to ignore them, particularly on holidays and birthdays. Neither does it appear she made any inquiry whatsoever about their welfare." (p. 508.)

Appellant here admitted she had never sent any birthday or Christmas greetings or acknowledgment to her child. She did supply one gift and made three perfunctory visits, the latter attended with strife unnecessarily generated by appellant. For all practical purposes in the three years immediately prior to the commencement of the adoption proceedings appellant remained indifferent toward Tracy. She argues she was prevented by the Herbsts from exercising visitation rights. In *In re Waters*, supra, a father opposing adoption of his child offered as justification for his failure to see the child the excuse that the maternal grandmother bore him animosity and would not have permitted him to see the

child. This court declined to accept this justification for the father's failure to attempt to see the child. Here appellant made no effort to see Tracy although she was aware of court proceedings through which that could be accomplished. Appellant exhibited no concern for Tracy or her well-being. Her conduct was virtually tantamount to abandonment. It is not our province to reweigh and reassess evidence on matters in dispute at the trial. Suffice it to say that evidence favorable to appellee's position sufficiently supports the trial court's findings and conclusions.

In her brief appellant says she is not asking for present custody as she realizes the child Tracy has established ties with her step-mother which ought not be broken, but she says she would like to have visitation rights. Our adoption statutes make no provision for such an intermediate position of a natural parent. As recently pointed out in *Browning v. Tarwater*, 215 Kan. 501, 524 P. 2d 1135, "Public policy demands that an adoption carry with it a complete breaking of old ties." (p. 505.)

Appellant makes two further contentions in support of reversal. Neither of these was presented to the trial court and they will not be considered for the first time upon appeal.

The judgment is affirmed.

APPROVED BY THE COURT.

FROMME, J., not participating.