No. 51,261

In the Matter of the Adoption of DORAL SAMUEL STECKMAN and MILDRED MAE STECKMAN

(620 P.2d 319)

Opinion filed December 6, 1980.

*Robert G. Frey,* of Frey, Smith & Schmidt, of Liberal, argued the cause and was on the brief for the appellant.

*Christopher P. Christian,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause and *Jerry G. Elliott,* of the same firm, and *Emerson H. Shields,* of Shields and Bennington, P.A., of St. John, were with him on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: This is an appeal by Doral Eugene Steckman from a decree of adoption granted in the Stafford District Court. Steckman, the natural father of Sammy and Millie Steckman, is contesting his children's adoption by Glen Courtney, their stepfather, because he did not give his consent.

Steckman and Mildred Rebecca Steckman, now Courtney, were divorced June 2, 1976. Mildred received custody of the two minor children, Sammy and Millie. Steckman was granted visitation rights consisting of alternate Saturdays and Sundays of each month and was ordered to pay child support of seventy-five dollars on the first and fifteenth of each month. On August 26, 1977, the former Mrs. Steckman married Glen Courtney. The Courtneys and the two children have lived together as a family since that time, supported by Glen Courtney.

On September 6, 1978, with the consent of Mrs. Courtney, Glen Courtney petitioned the Stafford District Court for the adoption of Sammy and Millie. The district court entered its order of adoption on June 7, 1979, finding Steckman had failed to support the children and had "failed the natural and moral duty of a parent to show affection, care and interest toward his children . . . ." The court relied upon K.S.A. 59-2102(3), which provides:

"Before any minor child is adopted, consent must be given to such adoption:

. . . .

(3) by one of the parents if the other has failed or refused to assume the duties of a parent for two (2) consecutive years or is incapable of giving such consent . . . ."

## The court's findings of fact in support of its order state:

"That in the two years preceding the filing of the petition for adoption, that there was one birthday gift to Doral Samuel Steckman, the son in 1976. No birthday gifts to Mildred Mae Steckman. At Christmas 1976 there was a $10.00 gift to each child.

"In 1977 there was a telephone call to Doral Samuel Steckman on his birthday but no gift to Mildred Mae Steckman on her birthday. On Christmas 1977 there was a gift to each child, but the children were not at home.

"In June of 1978 a present for Sammy and the natural father stopped by the swimming pool sometime during that summer and saw the children which have been the total contacts by the natural father. The father had moved from the community in June of 1976 and had to return to the area approximately once every three months, but made no attempt to contact the children other than the times indicated."

The record also indicates Steckman made no child support payments during the two years in question.

Appellant argues he was denied due process of law under the Fourteenth Amendment to the U.S. Constitution when his parental rights were severed by the adoption of his children without his consent and without a finding of his unfitness.

Let us examine the nature of the constitutional rights of parents. The Supreme Court has determined that the liberty guaranteed by the Fourteenth Amendment gives an individual the right to marry, establish a home and bring up children. *Meyer v. Nebraska,* 262 U.S. 390, 67 L.Ed. 1042, 43 S.Ct. 625 (1923). In *Stanley v. Illinois,* 405 U.S. 645, 651, 31 L.Ed. 2d 551, 92 S.Ct. 1208 (1972), the U.S. Supreme Court recognized the rights of natural parents stating:

"The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment [citation omitted], the Equal Protection Clause of the Fourteenth Amendment [citation omitted], and the Ninth Amendment [citation omitted]."

The court declared an Illinois statute denying an unwed father a hearing to determine parental qualifications to be contrary to the Equal Protection Clause.

The prior cases graphically illustrate the court's emphasis on the importance of the family and the nature of a parent's rights

under the Constitution of the United States. In *Denton v. James,* 107 Kan. 729, 735, 193 Pac. 307 (1920), Justice Burch stated, after citing the Kansas Bill of Rights:

"Man has no higher right or interest or happiness than that for which the words family and home stand. Very often it is said, with a touch of derision, that a child is not a chattel, and a parent has no property in his child giving him right to custody—which is very true. The interest which a parent has in the nurture of his own offspring, and in nearness to them for that purpose, lies in a different plane from that occupied by property; it transcends property. On the child's side, it has no higher welfare than to be reared by its parents. The state has no higher welfare than to have children reared by their parents, and free government is instituted for the protection and benefit of parenthood as one of the natural rights which the citizen possesses. Acting on these principles, this court holds that welfare of a child is best subserved by leaving it with its natural guardian until it is demonstrated that the parent is unfit to discharge the duties which are correlative to his right. Then, and not until then, does his right yield."

Custody or severance of parental rights is dependent upon fitness. Adoption without consent is dependent upon forfeiture of parental rights by failure or refusal to exercise parental duties for a period of two consecutive years. K.S.A. 59-2102(3). We have held forfeiture of parental right to consent is not dependent on fitness. *In re Adoption of Wilson,* 227 Kan. 803, 610 P.2d 598 (1980).

The cases involving stepparent adoptions are the following: *In re Waters,* 195 Kan. 614, 408 P.2d 590 (1965), involved the minor child Kenji Scott Waters, the son of Arthur Philip Waters and Loretta Waters, born in Japan in 1956 where Waters was teaching school. In 1957 the Waters were divorced and by the terms of a child custody agreement Kenji was placed in the custody of Loretta with Arthur having unlimited rights of visitation while they remained in Japan. In spite of the agreement, Loretta Waters concealed her whereabouts and that of Kenji for the remainder of their stay in Japan. Later in 1957 Loretta and Kenji returned to Colorado. In 1960, Loretta married Alvin R. Zweygardt and since that time Kenji had lived with Loretta and Alvin on a ranch in northwest Kansas. Arthur Waters never saw Kenji after the divorce and made no attempt to visit him even when he was in the same town. Waters paid child support until July 1961, then stopped. This court held that whether a parent has failed or refused to assume the duties of a parent for two consecutive years is a question of fact for the trial court and if supported by substantial competent evidence will not be disturbed, even

though the mother acknowledged she had at all times deliberately concealed Kenji from his father. In a dissent joined by Justice Fontron, Justice, now Chief Justice, Schroeder stated:

"The father's failure to pay money through the mother's parents for the support of Kenji for a period of two years cannot be legally excused. But this is the only thread of evidence upon which the court can rely to sustain the finding of the trial court, unless it can be said that the failure of the father to search for the child and resort to court action was required. This, however, in my opinion, would be an unwarranted requirement under the circumstances here presented, *where the mother is guilty of deliberately concealing the child from the father,* and where the issue presented is whether the father has failed to assume the duties of a parent for two consecutive years.

"On this point, in my opinion, the failure of the father to send money for the support of his child, through the mother's parents, for two consecutive years is mitigated by the deliberate concealment of the child by the mother, and by the further concealment of her whereabouts from the father, in violation of his rights as a natural parent. Under these circumstances, I do not think it can be said the father failed or refused to assume the duty of a parent for two consecutive years. If so, the mother is permitted to take advantage of the child's father and the natural parent of Kenji by her own misconduct and contempt for the law.

"Perhaps in a situation such as this the child should have a father present in the home where he resides, such as the stepfather in this case, and this may have prompted the probate court and the district court to permit the adoption to stand; but this approach entirely ignores the legal proposition presented and establishes a bad precedent." *In re Waters,* 195 Kan. at 620-621. (Emphasis in original.)

In the case of *In re Sharp,* 197 Kan. 502, 419 P.2d 812 (1966), we held the consent of both natural parents is required except when they have failed or refused to assume the duties of a parent for two consecutive years immediately preceding the filing of the adoption petition. The court adopted a strict construction of the statute in favor of the natural parent. This court defined the term "obligation of a parent" as follows:

"Although a natural parent under a divorce decree is given only rights of visitation with minor children, we are not prepared to say that all the other privileges, duties and obligations of parenthood are thereby excluded. The simple acts whereby a parent may manifest normal affection, care and interest in a child are ordinarily not judicially proscribed. The door is left ajar for the parent to maintain the remaining thread of the parent-child relationship. The exercise of the right of visitation is only one of the many factors to be considered by the court in its ultimate determination." *In re Sharp,* 197 Kan. at 508.

In *Aslin v. Seamon,* 225 Kan. 77, 587 P.2d 875 (1978), the trial court found William Thompson, the natural father of Linda and Tina Foster, had consented to their adoption by David and Marjorie Seamon, while Clara Foster Aslin, their natural mother,

had failed to assume her duties as parent for two consecutive years prior to the filing of the petition. The trial court found she forfeited her right because a parental obligation requires more than " 'sporadic attempts at having a child returned.' " *Aslin* at 78. The Court of Appeals made new findings of fact and reversed the trial court. We held, in reversing the Court of Appeals, that the question of whether or not an individual has failed or refused to assume the duties of a parent for two consecutive years is a question of fact to be determined by the trial court upon competent evidence after a full and complete hearing, which will not be disturbed on appeal if substantial competent evidence exists to support the findings. See *In re Herbst,* 217 Kan. 164, 535 P.2d 437 (1975).

We next dealt with a construction of K.S.A. 59-2102(3) in *In re Adoption of Wilson,* 227 Kan. 803. Dennis and Mary Wilson were married in 1971, had two children, Jason Lee and Jeremy Ray, and were divorced in 1975. Mary obtained custody of the two children and Dennis was ordered to pay $250 per month child support and keep certain insurance in effect. Dennis fell behind on his payments and requested a reduction, which the court allowed. In the meantime, Mary married Glenn L. Patrick in 1976, who petitioned to adopt the two children in 1978. We held Dennis had not assumed his duty as a parent for two consecutive years by his failure to pay child support, or send gifts at Christmas or on holidays. Additionally, he visited the children only once during the two years. Wilson explained his failure by stating he had financial problems and was unable to provide support. He stated he had requested visitation rights in 1977 but Mary had not responded to those requests. Further, he testified he had not sent presents because he respected the religious beliefs of the Patricks, who were Jehovah's Witnesses. We held the trial court's findings of fact were supported by substantial competent evidence and thereby rejected Dennis Wilson's explanation.

We must consider the complications arising from a situation in which one parent obtains custody of the child while the other parent is given limited visitation rights and is ordered to pay child support. Often, the parent with custody designates the terms of visitation, when and where it shall be. In many cases, the spouse who is delinquent in child support is advised there can be no visitation until the financial obligation is paid in full. Often,

the parent with custody remarries and moves the child to another area, making it difficult for the dispossessed parent to see the child. The parent with possession of the child is awarded the pleasure of the child's company and the sum of parental rights with respect to the rearing of the child. That parent has the right to direct the child's activities and make decisions regarding care, control, education, health and religion. 59 Am. Jur. 2d, Parent and Child § 25, p. 107. The dispossessed parent has very little remaining except an obligation to pay child support and the privilege of a painful visit at a time and place determined by the former spouse.

Considering the previously enumerated problems, typical of broken marriages involving children, and the U.S. Supreme Court's recognition of the importance of the family, we reaffirm our strict construction of K.S.A. 59-2102, and in particular, section 3 of that statute. In reassessing our holdings in earlier Kansas adoption cases, we interpret K.S.A. 59-2102(3) to refer to those parents who, by their actions, clearly show little or no interest in the welfare of their children. See *In re Adoption of Harrington,* 228 Kan. 636, 620 P.2d 315 (1980).

Let us now examine the conduct of Doral Eugene Steckman toward his children to determine whether he has failed or refused to assume his parental duties for the two consecutive years immediately prior to this action. He must be judged on the balance of his conduct and attitude toward his children from September 6, 1976, to September 6, 1978. Appellant remembered Sammy's birthday each year with a present or a phone call. There is no evidence Millie's birthday was remembered. Both children received Christmas gifts from appellant in 1976 and 1977 and the record shows disputed assertions that Easter and Valentine cards were sent. Steckman visited the children at the time of Sammy's birthday in 1978, at the swimming pool in Stafford and attempted to visit them in December, 1977, but didn't make connection due to the children's absence. Finally, Steckman furnished Blue Cross and Blue Shield medical insurance for the two children the entire two year period.

Although we do not condone Doral Steckman's refusal to pay child support, his other actions, including concern for the children, visits, observation of birthdays and Christmas and his providing medical insurance, taken cumulatively clearly show he

had not failed or refused to assume his parental responsibilities for two consecutive years and his consent was therefore essential for a valid adoption. The evidence does not support the judgment of the district court.

The judgment of the district court is reversed and the decree of adoption is set aside.

HOLMES, J. dissenting.

I dissent! More specifically, I dissent from the penultimate and last paragraphs of the majority opinion. I am in agreement with nearly everything said in the balance of the opinion as it adequately and clearly demonstrates that the decision of the district court should be affirmed.

The majority opinion has converted K.S.A. 59-2102(3) from one which does not require the consent of a parent to an adoption if that parent "has failed or refused to assume the duties of a parent for two (2) consecutive years" into a statute of limitations which requires the consent of a parent if the parent has had any contact whatsoever with the child during the two-year period. Such is not the meaning or intent of the statute and it has never been the law of this state prior to today. The holding of the majority, as a practical matter, requires absolute and total abandonment by the parent of the child for two years before the statute comes into play. The majority has totally disregarded the interests of the child by setting an arbitrary rule for the benefit of a parent no matter how little affection or concern may have been shown to the child.

The contacts made by the father in this case are set forth in the majority opinion as found by the trial court and as supported by the evidence. It is difficult to imagine a situation in which less concern and interest could be shown short of total abandonment. The father, although steadily employed with the same employer for the entire two-year period, did not pay one cent in child support although he testified he was capable of doing so. His excuse was that he was "bullheaded" and "stubborn." That hardly shows any parental care or concern for the children. The father claims that he provided Blue Cross-Blue Shield coverage for the children. It is also clear that the father had remarried to a woman with one child and the insurance, available through his employer, also covered them. It seems fair to speculate that if there had not been a second wife and stepchild, he probably

would not have carried a Blue Cross-Blue Shield family plan. He testified that when he assumed his present employment about September 1, 1976, his employer furnished the insurance coverage for him and he did not seek family coverage at that time. The statement by the majority that he carried medical insurance on the children for the entire two-year period is not supported by the record. What is supported by the record is that during the critical two-year period he visited the children twice, gave each child a Christmas present during 1976 and 1977, gave Sammy birthday presents in 1976 and 1978, called Sammy in 1977, and may have sent some Easter cards or Valentines. That constitutes the sum total of the parental duties he was willing to assume over a two-year period. He lived only 150 miles away and was in the children's area at least every three months but did not bother to visit them.

In *Aslin v. Seamon,* 225 Kan. 77, 587 P.2d 875 (1978), we said:

"Ordinarily the question whether or not an individual has failed or refused to assume the duties of a parent for the required period of time is a factual one to be determined by the trier of facts upon competent evidence after a full and complete hearing. *In re Herbst,* 217 Kan. 164, 535 P.2d 437 (1975); *In re Sharp,* 197 Kan. 502, Syl. ¶ 5, 419 P.2d 812 (1966); *In re Waters,* 195 Kan. 614, Syl. ¶ 1, 408 P.2d 590 (1965). When findings of fact are attacked for insufficiency of evidence or as being contrary to the evidence, the duty of the appellate court extends only to a search of the record to determine whether substantial competent evidence exists to support the findings. An appellate court will not weigh the evidence or pass upon the credibility of the witnesses. Under these circumstances the reviewing court must review the evidence in the light most favorable to the party prevailing below. *Craig v. Hamilton,* 221 Kan. 311, 313, 559 P.2d 796 (1977) and cases cited therein." p. 78.

We found in *Aslin* that the Court of Appeals had reweighed the evidence, which it could not do. We reversed the Court of Appeals. Today the majority has seen fit to do what we said in *Aslin* an appellate court cannot do. The majority has violated its own pronouncements and has seen fit to reweigh the evidence in this case and, based upon the meager showing of the father, reverse the trial court which until today was supposed to be the trier of the facts.

I now turn to the authorities relied upon by the majority to support its interpretation of the facts in this case. First, the majority cites *Stanley v. Illinois,* 405 U.S. 645, to the effect:

"The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment [citation omitted], the Equal Protection Clause of

the Fourteenth Amendment [citation omitted], and the Ninth Amendment [citation omitted]," p. 651.

and proclaims that it "graphically illustrate[s] the court's emphasis on the importance of the family . . . ." What family unit is the majority seeking to protect? The only family unit in this case is the one comprised of the mother, two children and the stepfather, who wants to become the adoptive father. Insisting upon maintaining the biological father's status quo does nothing to preserve and only tends to weaken the only family unit involved.

The majority next cites Justice Burch in *Denton v. James,* 107 Kan. 729, 193 Pac. 307 (1920), for the proposition that:

"Man has no higher right or interest or happiness than that for which the words family and home stand. . . . The interest which a parent has in the nurture of his own offspring, and in nearness to them for that purpose, lies in a different plane from that occupied by property . . . . On the child's side, it has no higher welfare than to be reared by its parents." p. 735.

I agree one hundred percent with the thoughts of Justice Burch, but do they apply to Doral Eugene Steckman? He has shown no interest in his children, he has wholly failed to "nurture his own offspring" and has demonstrated no interest in being near to them. On the other hand a child has "no higher welfare than to be reared by its parents." The only interested and caring parents Sammy and Millie have are their mother and their proposed adoptive father.

In *In re Waters,* 195 Kan. 614, the majority of the court, speaking through the late Chief Justice Parker, followed what has heretofore been the law of this state and stated:

"In any event whether a parent has failed to assume the duties of a parent for two consecutive years rendering unnecessary consent to adoption is a question of fact. The factual question is one for determination of the trier of facts on competent evidence." p. 617.

The majority seeks solace in the dissenting opinion of Justice, now Chief Justice Schroeder. However, it is clear that the dissent hinged upon the fact that the mother had concealed her son from his natural father and deliberately and wilfully prevented the father from seeing his son. Such a situation does not exist in the present case. It appears that Doral Eugene Steckman has deliberately and wilfully refrained from any attempts to see his children.

I have no quarrel with the majority's reliance upon *In re Sharp,* 197 Kan. 502, for the proposition that K.S.A. 59-2102(3) should be strictly construed. I agree. But in the present case, as in *Sharp,* the evidence clearly supports the trial court's decision. In *Sharp* the question of whether the consent of the mother was required was before the court. The natural mother had neglected to visit her children and had failed to acknowledge their birthdays or to remember them at Christmas, much in the same manner as Doral Eugene Steckman has seen fit to do with his children. The court stated:

"Although a natural parent under a divorce decree is given only rights of visitation with minor children, we are not prepared to say that all the other privileges, duties and obligations of parenthood are thereby excluded. The simple acts whereby a parent may manifest normal affection, care and interest in a child are ordinarily not judicially proscribed. The door is left ajar for the parent to maintain the remaining thread of the parent-child relationship. The exercise of the right of visitation is only one of the many factors to be considered by the court in its ultimate determination. Under the facts as disclosed by the petitioner's evidence, it is difficult to imagine that a natural mother, although without the privilege of full custody, would be unmindful of important occasions in the lives of her children, and that she would be content to ignore them, particularly on holidays and birthdays. Neither does it appear she made any inquiry whatsoever about their welfare. Her reasons, if any, for such inaction may properly be considered by the court in support of her answer to the petition." p. 508.

In the case of *In re Adoption of Wilson,* 227 Kan. 803, 610 P.2d 598 (1980), the father, Dennis Wilson, failed to visit his children except for one time in two years. He explained his failure to send presents because of religious beliefs and the failure to support because of inability. When the trial court held the father's consent unnecessary this court once again refused to disturb the factual findings of the trier of facts. Mr. Steckman claimed no such religious beliefs by any of the family and certainly was capable of helping support his children.

The majority sets forth numerous generalities which may or may not arise when divorce becomes necessary. While such generalities may be true, they have no application to the facts which were before the trial court. There is no doubt that divorce leads to heartbreak and inequities but that is part of life which must be reckoned with and the solutions to which rest with the trial court in its sound discretion.

As recently as May of this year, this court in *Wilson* reiterated and followed the appropriate standard of review from *Aslin v.*

*Seamon,* 225 Kan. at 78, as hereinbefore set forth. I would continue to follow our prior holdings. The evidence in this case was more than sufficient to support the findings of the trial court.

I would affirm the judgment of the trial court.

McFARLAND, J., joins in the foregoing dissent.