No. 51,061

In the Matter of the Adoption of TATUM OLIVIA HARRINGTON, A Minor

RICHARD E. TOLAND, *Appellee,* v. PATRICK DANIEL HARRINGTON, *Appellant.*

(620 P.2d 315)

Opinion filed December 6, 1980.

*Charles A. Chartier,* of Junction City, argued the cause and was on the brief for the appellant.

*Keith R. Henry,* of Weary, Davis, Henry, Struebing & Troup, of Junction City, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal by Patrick D. Harrington, natural father of the minor child, Tatum Olivia Harrington, from a decree of adoption granted to Richard E. Toland, stepfather of the child.

The trial court found the natural father had failed to assume the duties of a parent for two consecutive years.

In material respects the record reflects only minor conflicts in the testimony. The trial court found Tatum was born on August 18, 1974, to the marriage of Patrick and Elaine Harrington. The parents were divorced in November 1974. Custody was awarded to the mother, no specific visitation rights were established, and the father was ordered to pay $50 monthly child support.

Following the divorce of the natural parents, the mother married Richard Toland, the petitioner, in August 1975. The mother filed written consent to Toland's adoption of the child, but the natural father did not consent to the adoption. The trial court found the father was not in arrears in child support payments at the time the adoption petition was filed, January 29, 1979. The father had made two payments during the two-year period immediately preceding the filing of the adoption petition. In March 1977 the father paid $150; in December 1978 he paid $1,200.

During the same two-year period the father sent one birthday card to Tatum in August 1977, and one Christmas card to the Tolands in December 1978. The father testified he had given a few dollars on two separate occasions to his mother to purchase a gift for the child.

The trial court found the father did not attempt to exercise his visitation rights during the two-year period, nor did he have any contact or visits with the child during that period. At all times the father knew the child's whereabouts, but testified he felt uncomfortable visiting the child in the Toland home. The trial court found the father "has failed to assume the duties of a parent for the two years immediately preceding the filing of the adoption petition," and concluded:

> "The duties of a parent include more than the payment of support, particularly when a large deficit in the monthly child support is made in one lump sum shortly prior to the filing of the adoption petition. The parental duties of the respondent of care, interest in, affection for and visitation of his child Tatum, are for all intents non-existent for the two year period immediately prior to the filing of the petition for adoption by the petitioner. Therefore, a consent by the respondent Patrick Daniel Harrington, to the adoption of Tatum Olivia Harrington, by the petitioner is not required."

The trial court then granted Richard Toland's petition for adoption.

We have gleaned from the record the following additional relevant evidence. When the father and mother both resided in Topeka, the father regularly exercised visitation at least twice weekly. When the mother married Richard Toland in August 1975, they moved across the state to Great Bend. The father testified he visited the child in Great Bend three or four times, but was permitted to take the child for only one complete weekend, in May 1976. The Tolands moved to Junction City in July 1976. The father testified that during the two-year period prior to filing the adoption petition, the mother discouraged visitation, and occasionally requested him to consent to adoption. The mother wrote to him and explained her desire that he not be part of their daughter's life. The last time the father visited the child was on January 1, 1977, at the home of his mother, the child's paternal grandmother. Both parents testified to an agreement suspending past due child support payments while the father considered possible consent to the adoption. The large child support payment made in December 1978 was enclosed in the Christmas card

the father sent to "The Tolands." The payment was a cashier's check purchased on September 11, 1978, but the card and check were not mailed until mid-December 1978.

The father briefs two issues on appeal. He contends the Kansas adoption statutes, particularly K.S.A. 59-2102, must be strictly construed in favor of natural parents. The father further contends he has not failed or refused to assume the duties of a parent for two consecutive years.

K.S.A. 59-2102 provides, in pertinent part, that:

"Before any minor child is adopted, consent must be given to such adoption:
"(1) by the living parents of a legitimate child, or

. . . . .

"(3) by one of the parents if the other has failed or refused to assume the duties of a parent for two (2) consecutive years or is incapable of giving such consent."

The consent by the natural parents to the adoption of their child, where required by statute, is regarded as an essential requisite to jurisdiction on the part of the court to render a valid decree of adoption. *In re Marsolf,* 200 Kan. 128, 131, 434 P.2d 1010 (1967); see *In re Nelson,* 202 Kan. 663, 451 P.2d 173 (1969).

Under K.S.A. 59-2102 the consent of natural parents to the adoption of a legitimate child is specifically required unless the case falls within one of the enumerated exceptions. The facts warranting an exception as prescribed by the statute must be clearly proven before the child can be adopted without consent of the natural parent. *In re Sharp,* 197 Kan. 502, 505, 419 P.2d 812 (1966). See *In re Nelson,* 202 Kan. 663, Syl. ¶ 3.

Generally speaking, adoption statutes are strictly construed in favor of maintaining the rights of natural parents in controversies involving termination of the parent-child relation, and especially is this true in those cases where it is claimed that by reason of a parent's failure to fulfill parental obligations as prescribed by statute, his consent to the adoption is not required. *In re Sharp,* 197 Kan. at 504.

The law in other jurisdictions seems to be fairly well settled that in order to grant an order or decree of adoption in opposition to the wishes and against the consent of the natural parent, the conditions prescribed by statute which make the consent unnecessary must be clearly proved and the statute construed in support of the right of the natural parent. The law is solicitous toward maintaining the integrity of the natural relation of parent and

child, and where the absolute severance of the relation is sought without the consent and against the protest of the parent, the inclination of the courts is in favor of maintaining the natural relation. *In re Waters,* 195 Kan. 614, 617, 408 P.2d 590 (1965).

Strict construction of K.S.A. 59-2102 is necessary to protect the rights of the non-consenting natural parent, because a decree of adoption terminates the parental rights of the non-consenting natural parent. K.S.A. 1979 Supp. 59-2103 states in pertinent part:

"Upon such adoption all the rights of natural parents to the adopted child, including their right to inherit from such child, shall cease, except the rights of a natural parent who is the spouse of the adopting parent."

We have strictly construed the statutory two-year time period to exclude the gestation period. *In re Nelson,* 202 Kan. at 663.

Emphasis on protection of natural parent's rights is also bolstered by United States Supreme Court decisions which have scrutinized due process rights of the natural fathers of illegitimate children. See *Quilloin v. Walcott,* 434 U.S. 246, 54 L.Ed.2d 511, 98 S.Ct. 549 (1978); *Stanley v. Illinois,* 405 U.S. 645, 31 L.Ed.2d 551, 92 S.Ct. 1208 (1972).

A review of recent cases on adoption, wherein K.S.A. 59-2102(3) was controlling or considered, is set forth in *In re Adoption of Steckman* 228 Kan. 669, 620 P.2d 319 (1980), reaffirming our strict construction of K.S.A. 59-2102, and in particular section 3 of that statute.

Here the father contends he did not fail or refuse to assume the duties of a parent for the two years immediately preceding the filing of the adoption petition.

Under our strict interpretation of K.S.A. 59-2102(3) we hold upon the whole record presented, as a matter of law, the natural father has not "failed or refused to assume the duties of a parent for two consecutive years" prior to the filing of the adoption petition by the stepfather. Here the natural mother discouraged visitation, occasionally requested the natural father to consent to adoption, wanted the natural father to be no part of their daughter's life, agreed that the natural father not pay child support while he considered giving consent to adoption, and the natural father, prior to the filing of the adoption petition by the stepfather, had made all child support payments due.

Accordingly, the lower court was without jurisdiction to grant the adoption, because the natural father did not consent. No

statutory exception applied which would permit adoption without the father's consent. The judgment of the lower court is reversed.

HOLMES, J., dissenting.