(819 P.2d 1244)

No. 65,567

## In the Matter of the Adoption of J.M.U.

Opinion filed November 1, 1991.

*Robb W. Rumsey,* of Rumsey, Plummer & Rumsey, of Wichita, for appellant Victoria Elder.

*John W. Brimer,* of Ratner, Mattox, Ratner, Brimer & Elam, P.A., of Wichita, for appellees Kimberly and Scott Spunaugle.

Before REES, P.J., DAVIS and PIERRON, JJ.

PIERRON, J.: This is an appeal by Victoria Elder from the trial court's denial of her request for visitation rights with J.M.U., Elder's deceased son's unmarried minor child, after J.M.U. was adopted by maternal relatives following the death of her parents.

J.M.U. was born on February 20, 1989, to Santiago Urquieta and Robin Lee Kilpatrick. On April 12, 1989, when J.M.U. was not yet two months old, Santiago killed Robin and took his own life. Kimberly Spunaugle, Robin's sister, took J.M.U. into her care immediately after the double tragedy.

On May 2, 1989, Wanda West, J.M.U.'s maternal grandmother, was appointed to serve as J.M.U.'s guardian. West agreed to Elder's entitlement to and exercise of visitation rights with J.M.U. J.M.U. was adopted by Kimberly and her husband, Scott Spunaugle, on September 8, 1989. After the adoption, the Spunaugles did not allow Elder to visit J.M.U. Elder instituted this proceeding by filing a petition seeking visitation rights with J.M.U. The trial court, finding no statutory authority to support Elder's request, denied the request.

We are confronted with the question of whether a parent of a deceased parent of an unmarried minor child is entitled to visitation rights with the child after the child's adoption by a third party.

In this case, whether the sought-after visitation would be in the best interests of the child and whether there is a substantial relationship between the child and her grandparent are questions the trial court conscientiously considered and answered in the affirmative. Those findings are not challenged on appeal.

We disagree with the trial court's finding that Elder is not entitled to visitation rights with J.M.U. and reverse.

In *Browning v. Tarwater*, 215 Kan. 501, 524 P.2d 1135 (1974), our Supreme Court was faced with the question of whether a paternal grandmother was entitled to the right of visitation with her deceased son's child after the child was adopted by the child's stepfather. The Supreme Court denied the right of visitation.

The version of K.S.A. 38-129 that applied in *Browning* provided:

"If either the father or mother of an unmarried minor child is deceased, the parents of such deceased person may be granted reasonable visitation rights to the minor child during its minority by the district court upon a finding that such visitation rights would be in the best interests of the minor child." K.S.A. 1971 Supp. 38-129.

The version of K.S.A. 59-2103 that then applied provided:

"Any [adopted child] . . . shall be entitled to the same rights of person and property as a natural child of the person . . . adopting the child. The person . . . adopting such child shall be entitled to exercise all the rights of a natural parent and be subject to all the liabilities of that relation. Upon . . . adoption all rights of natural parents to the adopted child . . . shall cease, except the rights of a natural parent who is the spouse of the adopting parent." K.S.A. 1971 Supp. 59-2103.

In *Browning*, a paternal grandmother, Tarwater, had obtained a district court order granting her visitation rights with her deceased son's child. The case came before the Supreme Court on an appeal by the child's mother from the trial court's denial of the child's mother's motion for termination of Tarwater's right of visitation. After the child's father's death, the child's mother had remarried and the child was adopted by the stepfather. Over a strong and eloquent dissent by Justice Fontron, the Supreme Court reversed the trial court's refusal to terminate Tarwater's ordered right of visitation.

In arriving at its decision in *Browning*, the Supreme Court reasoned and held that the adoption of the child by the stepfather

controlled the disposition of the question. An effect of the adoption was to prohibit the natural paternal grandmother from exercising visitation rights because, by the adoption, the child had a new father and new paternal grandparents. 215 Kan. at 506. Within the *Browning* majority opinion, it was stated:

"In our opinion K.S.A. 38-129 was not designed by the legislature to overturn the previously established adoption laws of the State of Kansas, but was enacted and intended to apply subject to the adoption laws. In other words, adoption proceedings properly conducted and accomplished under the probate code override 38-129, 38-130 and 38-131." 215 Kan. at 506.

After *Browning*, the adoption statute, K.S.A. 59-2103, underwent legislative change. The pertinent part of that statute in effect for the purposes of the case before us reads:

"(b) When adopted, a child shall be entitled to the same personal and property rights as a natural child of the adoptive parent. The adoptive parent shall be entitled to exercise all the rights of a natural parent and be subject to all the liabilities of that relationship. Upon adoption all the rights of natural parents to the adopted child, including their rights to inherit from the child, shall cease, except the rights of a natural parent who is the spouse of the adopting parent.

"(c) If a parent of a child is deceased and the surviving parent's spouse adopts the child, the parents of the deceased parent may be granted reasonable visitation rights to the child in accordance with K.S.A. 38-129 and amendments thereto." K.S.A. 59-2103.

Even more significant are the changes that the legislature enacted concerning K.S.A. 38-129 after *Browning*. In 1982 the statute was amended to read:

"(a) If a parent of an unmarried minor child is deceased, the district court may grant the parents of the deceased person reasonable visitation rights to the minor child during the child's minority upon a finding that the visitation rights would be in the best interests of the minor child.

"(b) Unless the court finds that the visitation rights are not in the child's best interests, the district court may grant visitation rights, or enforce visitation rights previously granted, pursuant to this section, even if the surviving parent has remarried and the surviving parent's spouse has adopted the child. Visitation rights may be granted pursuant to this subsection without regard to whether the adoption of the child occurred before or after the effective date of this act."

As was the obvious purpose of the new subsection (c) of K.S.A. 59-2103, new subsection (b) of the 1982 version of K.S.A. 38-129

was intended to specifically overrule *Browning*. No wider purpose need be assumed.

In 1984 the present form of K.S.A. 38-129 was enacted, which reads:

"(a) The district court may grant the grandparents of an unmarried minor child reasonable visitation rights to the child during the child's minority upon a finding that the visitation rights would be in the child's best interests and when a substantial relationship between the child and the grandparent has been established.

"(b) The district court may grant the parents of a deceased person visitation rights, or may enforce visitation rights previously granted, pursuant to this section, even if the surviving parent has remarried and the surviving parent's spouse has adopted the child. Visitation rights may be granted pursuant to this subsection without regard to whether the adoption of the child occurred before or after the effective date of this act."

Of greatest importance in the new language is that all restrictions on granting reasonable grandparent visitation are removed save the establishment that it be in the interests of the grandchild and that a substantial relationship between the grandchild and the grandparent has been established.

Subsection (b) of K.S.A. 38-129 provides that the broad new grant of visitation authority can be exercised *even if* the moving grandparent's child has died and the surviving parent has remarried and the new spouse has adopted the child. The language is *not* "only if."

The purpose of the 1984 changes was not only to overrule *Browning*. That was accomplished by the 1982 changes.

The obvious expansion of the statutory provisions for grandparent visitation after *Browning* shows a clear legislative intent to provide for precisely what K.S.A. 38-129(a) orders—grandparent visitation if it is in the child's best interests and there is a substantial grandparent-grandchild relationship in place. Death, divorce, or adoption are not mentioned as prerequisites.

Although the Supreme Court may have been concerned about *unintentional* modification of the adoption statutes by the legislature as a basis for the *Browning* decision, that cannot be a concern now. By specific legislative enactment the law as announced in *Browning* has been overruled. In addition, the possiblity for grandparent visitation has been unmistakably broadened by the same statute.

We acknowledge it can be argued (pursuant to *Browning*) that K.S.A. 38-129 is not applicable to adoption situations. However, since the question of grandparent visitation after adoption was addressed in K.S.A. 38-129 subsequent to *Browning* (and seemingly in reaction to *Browning*), we do not find such argument persuasive.

Further, in 1990 the legislature enacted a modernized adoption code. K.S.A. 1990 Supp. 59-2111 *et seq.* It eliminated any mention of the question of grandparent visitation following adoption from the adoption code, but left K.S.A. 38-129 intact. This would tend to confirm the view that K.S.A. 38-129 is applicable to adoption situations as it is the only statute specifically concerning grandparent visitation after adoption (or under any other circumstances).

Although *Browning*, in the absence of any specific legislative pronouncement, abolished grandparent visitation in adoption situations similar to the instant case, specific legislation governing this question is now in place, and in only one place—K.S.A. 38-129.

By specific disapproval of *Browning*, repeal of K.S.A. 59-2103, and the retention and expansion over the years of K.S.A. 38-129, the legislature has joined Justice Fontron's position in *Browning* that the grandparent-grandchild relationship should be fostered where it is in the grandchild's best interests and the relationship already exists.

Since the trial court found there was a substantial relationship and that visitation was in the best interests of the child, but denied visitation only on the legal grounds we have discussed, we reverse the decision and remand the case to the trial court to order reasonable grandchild-grandparent visitation.

Reversed and remanded.

REES, J., dissenting: I believe that the majority relies upon unacceptable result-desired reasoning to reach its decision. Within the majority opinion there is a search for supposed legislative intent to support the announced outcome. Our inquiry should be an examination of the operative effect of the statutory law and precedential case authority, as expressed by the legislature and our Supreme Court, that applies to our facts and the

question addressed. The legislature and our Supreme Court should be taken at their word in conducting the inquiry. We are not and cannot be mind readers. We should not go beyond ascertainment and harmonization of the expressed statutory and precedential case law operative at the times material to the case before us. It is not our role to legislate and it is inappropriate for us to undertake to do so.

The majority opinion fairly sets forth the factual and procedural underpinning of this case. It also fairly describes *Browning v. Tarwater*, 215 Kan. 501, 524 P.2d 1135 (1974). However, my colleagues' admiration of Justice Fontron's dissent in *Browning* seems to blind them from the fact that, as a member of the *Browning* court, Justice Fontron stood alone.

Two matters need to be mentioned. The first and more important of these is that *Browning* is a *stepparent adoption* case. The case before us concerns third-party adoption. The other is that it is of no consequence that Kimberly and Scott Spunaugle are related to J.M.U. other than as her adoptive parents.

The question raised for resolution is whether a parent of one of an unmarried minor child's deceased parents is entitled to visitation rights with the child after the child's adoption by third parties. Under the facts of this case, it develops that our answer to the question is governed by the pertinent case and statutory law operative during the period from July 1, 1984, to July 1, 1990.

Since *Browning*, 215 Kan. 501, was filed in 1974, it has not been overruled, modified, or distinguished by our Supreme Court.

*Browning* concerned the operative effect of two statutes. One was the 1971 predecessor version of K.S.A. 38-129 then in effect. Within that statute (the "1971 visitation statute") there was this text:

> "*If either the father or mother of an unmarried minor child is deceased,* the parents of such deceased person may be granted reasonable visitation rights to the minor child during its minority by the district court upon a finding that such visitation rights would be in the best interests of the minor child." (Emphasis added.) K.S.A. 1971 Supp. 38-129; L. 1971, ch. 149, § 1.

The other statute was the 1967 predecessor version of K.S.A. 59-2103 then in effect. Within that statute (the "1967 adoption statute") was this text:

"[An adopted child] . . . shall be entitled to the same rights of person and property as a natural child of the person . . . adopting the child. *The person . . . adopting such child shall be entitled to exercise all the rights of a natural parent* and be subject to all the liabilities of that relation. *Upon . . . adoption all the rights of natural parents to the adopted child . . . shall cease,* except the rights of a natural parent who is the spouse of the adopting parent." (Emphasis added.) K.S.A. 1971 Supp. 59-2103; L. 1967, ch. 316, § 1.

As said by the majority here, the Supreme Court, in arriving at its decision in *Browning,* reasoned and held that the adoption of the child by the stepfather controlled disposition of the question before it. The stepfather's adoption was held to operate to prohibit the natural paternal grandmother from exercising visitation rights because, by the adoption, the child had a new father and new paternal grandparents. 215 Kan. at 506. It is said in *Browning* that "[p]ublic policy demands that an adoption carry with it a complete breaking of old ties." 215 Kan. at 505. See *In re Herbst,* 217 Kan. 164, 168, 535 P.2d 437 (1975). Since the filing of *Browning* and *Herbst,* neither the Supreme Court nor the legislature has expressed rejection of the *Browning* public policy pronouncement.

*Browning* held that:

"In our opinion K.S.A. 38-129 [*the* 1971 *visitation statute*] was not designed by the legislature to overturn the previously established adoption laws of the State of Kansas, but *was enacted* and intended *to apply subject to the adoption laws.* In other words, *adoption proceedings* properly conducted and accomplished under the probate code *override 38-129* . . . ." (Emphasis added.) 215 Kan. at 506.

After presently immaterial intervening legislative change to K.S.A. 59-2103 in 1979 (L. 1979, ch. 180, § 1) and to K.S.A. 38-129 in 1982 (L. 1982, ch. 182, § 149), the version of K.S.A. 38-129 that applies to this case (the "1984 visitation statute") is this:

"(a) The district court may grant the grandparents of an unmarried minor child reasonable visitation rights to the child during the child's minority upon a finding that the visitation rights would be in the child's best interests and when a substantial relationship between the child and the grandparent has been established.

"(b) The district court may grant the parents of a deceased person visitation rights . . . , pursuant to this section, even if the surviving parent has

remarried and the surviving parent's spouse has adopted the child. . . ." (L. 1984, ch. 152, § 1.)

The version of K.S.A. 59-2103 that applies to this case (the "1983 adoption statute") includes this:

"(b) [An adopted child] . . . shall be entitled to the same personal and property rights as a natural child of the adoptive parent. *The adoptive parent shall be entitled to exercise all the rights of a natural parent* and be subject to all the liabilities of that relationship. *Upon adoption all the rights of natural parents to the adopted child . . . shall cease,* except the rights of a natural parent who is the spouse of the adopting parent.

"(c) If a parent of a child is deceased and the surviving parent's spouse adopts the child, the parents of the deceased parent may be granted reasonable visitation rights to the child in accordance with K.S.A. 38-129." (Emphasis added.) (L. 1983, ch. 140, § 43.)

As mentioned, the operative statutes in the case before us are the 1984 visitation statute and the 1983 adoption statute. As I read them, subsection (b) of the 1984 visitation statute and subsection (c) of the 1983 adoption statute authorize grandparent visitation *where there is stepparent adoption.* Under this statutory authorization, the result in *Browning* would have been different.

As also mentioned, in *Browning* the pertinent statutes were the 1971 visitation statute and the 1967 adoption statute. As I read the 1971 visitation statute and subsection (a) of the 1984 visitation statute, I find no difference relevant to our case. The only material difference between the two is that subsection (a) of the 1984 visitation statute grants authority for grandparent visitation to the broad category of "grandparents of an unmarried minor child," while the visitation authority under the 1971 visitation statute extended only to the smaller category of parents of a deceased parent of an unmarried minor child.

For the purposes of the case before us, there is no material difference between the 1971 and the 1984 visitation statutes. Further, subsection (b) of the 1983 adoption statute, which is applicable to this case, is for all practical purposes identical to the 1967 adoption statute which was involved in *Browning.*

In the present case, I am persuaded that, on the authority of *Browning,* 215 Kan. at 506, subsection (b) of the 1983 adoption statute overrides subsection (a) of the 1984 visitation statute with the result being that grandparent visitation is not authorized in cases where the child has been adopted by third parties. The

fundamendal holding in *Browning* was that *"adoption proceedings . . . override 38-129."* (Emphasis added.)

Thus, it is my conclusion that the answer to the posited question raised for resolution on this appeal should be answered in the negative. Accordingly, I would affirm the trial court's denial of Elder's request for visitation. The language of *Browning* and the statutes is clear and direct. There is no need to hunt for legislative intent that, at best, is speculative. Further, it clearly is decided and held in *Browning* that the adoption statute overrides the visitation statute. The result reached by the majority violates the reported rule that we are duty-bound to follow our Supreme Court's decisions. *Batt v. Globe Engineering Co.*, 13 Kan. App. 2d 500, 507, 774 P.2d 371, *rev. denied* 245 Kan. 782 (1989); *Dick Hatfield Chevrolet, Inc. v. Bob Watson Motors, Inc.*, 10 Kan. App. 2d 350, 352, 699 P.2d 566, *aff'd* 238 Kan. 41, 708 P.2d 494 (1985); *Stratton v. Garvey Internat'l, Inc.*, 9 Kan. App. 2d 254, Syl. ¶ 6, 676 P.2d 1290 (1984). No exception to the rule applies here.

The majority tells us that the 1983 adoption statute (K.S.A. 59-2103) has been repealed. This is only partially true. Although subsections (b) and (c) of the 1983 adoption statute were repealed by the 1990 legislature (L. 1990, ch. 145, § 38), subsection (b) was simultaneously reenacted with only insignificant cosmetic change. K.S.A. 1990 Supp. 59-2118(b); L. 1990, ch. 145, § 8.

In their answer to Elder's petition, the Spunaugles asked for the award of costs and reasonable attorney fees pursuant to K.S.A. 38-131. The trial court made no awards or mention of costs or attorney fees in its journal entry. Similarly, the majority is silent on the subject.

K.S.A. 38-131 directs that "costs and reasonable attorney fees *shall* be awarded to the respondent in an action filed pursuant to K.S.A. 38-129 *et seq.* unless the court determines that justice and equity otherwise require." (Emphasis added.) In *Spradling v. Harris*, 13 Kan. App. 2d 595, 602-03, 778 P.2d 365, *rev. denied* 245 Kan. 785 (1989), the trial court made no finding that justice and equity would "otherwise require"; nonetheless, it ordered the respondent to pay her own attorney fees. We reversed and remanded the case to the trial court to order attorney fees

and costs be paid by the petitioner unless it found justice and equity otherwise required. 13 Kan. App. 2d at 603.

In this case, the trial court should be directed to award costs and attorney fees to the Spunaugles unless it finds that justice and equity otherwise require. The case should be remanded to the trial court for further proceedings to comply with the statutory directions set forth in K.S.A. 38-131.