No. 44,540

In the Matter of the Adoption of James Preston Sharp, Jr., and Valerie Lynn Sharp, Minors. (Juanita Loren Sharp, *Appellant,* v. Dianne Thurman, *Appellee.*)

(419 P. 2d 812)

Opinion filed November 5, 1966.

*H. E. Pat Healy,* of Wichita, argued the cause, and was on the brief for the appellant.

*Tom Cunningham,* of Wichita, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

O'CONNOR, J.: This is an appeal in an adoption proceeding which was instituted in the probate court of Sedgwick county on January 8, 1965, by the stepmother of two minor children. The petition was premised on an allegation that the consent of the natural mother was unnecessary because of her failure and refusal "to assume the duties of a parent for two consecutive years" under K. S. A. 59-2102 (3). An answer was filed in which the natural mother denied the pertinent allegations of the petition and objected to the adoption. After a full hearing in the probate court a decree of adoption was entered from which the natural mother appealed. At the trial in district court the court heard petitioner's evidence, and at the conclusion thereof the mother "demurred to the evidence of the petitioner," whereupon the court denied the petition. Petitioner's motion for new trial was overruled, and this appeal followed.

The issues presented on appeal are: (1) Does the phrase "two consecutive years" as used in K. S. A. 59-2102 (3) mean the period next preceding the filing of a petition for adoption? and (2) In denying the stepmother's petition for adoption, without hearing the evidence of the natural mother, did the district court err in determining there could be no failure or refusal to assume the duties of a parent for two consecutive years because of one visit by the natural mother, at which she brought gifts to her children, during such period?

The facts are not in substantial dispute. Dianne Sharp Thurman (appellee), natural mother of the minor children, and their father, James P. Sharp, were divorced on November 27, 1957. Custody of the children, then one and two years of age, was awarded to the father. In 1958 Sharp married Juanita Burke (the appellant, Juanita Sharp), who thereafter assumed the normal duties of a parent toward the minor children. The evidence before the district court was that through the years Mrs. Sharp continued to accept these parental responsibilities, supervising the children's school and church attendance, caring for them during illnesses, making no distinction in any way between them and the three children born of her marriage to Mr. Sharp, and dedicating herself to their general well-being.

In June 1959 an order in the divorce action was entered granting the natural mother visitation rights with her children on alternate

Sundays and on Christmas Eve and Thanksgiving Eve. The natural mother, who has since remarried, took no advantage of the visitation rights during all of 1963 and 1964. The evidence was that Mrs. Thurman did not acknowledge her children's birthdays or remember them at Christmas, either by sending gifts or cards, nor did she manifest any interest whatsoever in them during this two-year period. Immediately preceding New Year's 1965, however, Mrs. Thurman telephoned the Sharps and indicated she would like to see her children and bring them some presents. This she did on January 2, 1965, just six days prior to the filing of the petition for adoption.

In granting the adoption, the probate court found that the natural mother "has wholly failed to assume the duties of a parent, towards said minor children, for a period of more than two consecutive years, last past, and on account of the premises herein stated, the consent of the said natural mother to the adoption of the said children is not required." The district court, in a trial *de novo*, heard only the petitioner's evidence before acting on respondent's "demurrer." A careful reading of the trial judge's comments discloses his ruling was based upon the grounds that K. S. A. 59-2102(3) requires that the two-year period referred to must *immediately precede* the filing of a petition for adoption, and because the natural mother visited and brought gifts to her children on January 2, 1965—within the two-year period—this requirement had not been met.

Although both the probate court and district court construed the statute to mean the two-year period next preceding the filing of the petition, this court has never had occasion to consider the point.

The appellant stepmother challenges the lower courts' construction, since the uncontradicted evidence established the appellee natural mother had failed or refused to assume the duties of a parent for the years 1963 and 1964, and argues that the statute, by its language, does not require that the two-year period be that period next preceding the initiation of adoption proceedings.

Generally speaking, adoption statutes are strictly construed in favor of maintaining the rights of natural parents in controversies involving termination of the parent-child relation, and especially is this true in those cases where it is claimed that by reason of a parent's failure to fulfill parental obligations as prescribed by statute, his consent to the adoption is not required. (2 Am. Jur. 2d, Adoption § 7.)

We have carefully reviewed the legislative history and purpose of our adoption statutes which were enacted in 1939. (Laws of 1939, ch. 180.) Although the consent statute (K. S. A. 59-2102) has twice been amended (Laws of 1951, ch. 341, § 1, and Laws of 1953, ch. 274, § 1), subsection 3 thereof has gone unchanged from the original enactment. We find nothing in the legislative history to indicate the lawmakers intended that the two-year period be without reference to a focal point, such as the filing of a petition for adoption.

The ties of a natural parent are not to be treated lightly. Under K. S. A. 59-2102 the consent of natural parents to the adoption of a legitimate child is specifically required unless the case falls within one of the enumerated exceptions. The facts warranting an exception as prescribed by the statute must be clearly proven before a child can be adopted without the consent of the natural parent. Our procedure provides a means whereby the nonconsenting parent can take issue with and refute the evidence upon which a petitioner relies to dispense with the consent ordinarily required.

If the statute were construed to mean that any two-year period in which a parent failed or refused to assume parental duties was sufficient to dispense with consent, a parent, who through a change of heart or circumstances had attempted to reassume such duties after the two-year period, would be placed in the difficult position of proving there had been in fact repentance. While there appears to be authority permitting a repentant parent to show a resumption of parental obligations and thus reacquire the right to object to adoption (2 Am. Jur. 2d, Adoption § 36), we believe that by limiting the two-year period of consideration to that next preceding the filing of the petition a natural parent is placed in a more advantageous position to uphold his rights. In other words, the fulfillment of parental duties and obligations is, in our thinking, more accurately gauged by the facts found to exist during the two-year period next preceding the initiation of the adoption proceedings.

In light of the foregoing rules of statutory construction, and the inclination of the courts to uphold the rights of the natural parent, we are of the opinion that it was reasonably intended by the legislature that the failure or refusal to assume the duties of a parent for two consecutive years as provided in K. S. A. 59-2102 (3) refers to the period *next preceding* the filing of a petition for adoption.

Since a demurrer to the evidence is no longer recognized in our

Code of Civil Procedure, we need not belabor the point of whether or not the district court considered respondent's "demurrer" as a motion for involuntary dismissal under K. S. A. 60-241 (b). It is apparent the court's ruling at the conclusion of petitioner's uncontroverted evidence, without hearing the evidence of the natural mother, was based solely on its determination there could be no failure or refusal to assume the duties of a parent for two consecutive years next preceding the filing of the petition because of the January 2 visit of the natural mother at which she brought gifts for her children. In this, we are of the opinion the court erred.

In considering the rights and correlative duties that a parent has with respect to his child, we find the following statement in 2 Am. Jur. 2d, Adoption § 29:

". . . A parent's right or interest in or to the custody of an infant child is in the nature of a trust reposed in him, which imposes upon him the reciprocal obligation to maintain, care for, and protect the child, and the law secures him in this right so long as he shall discharge the correlative duties and obligations, and no longer; . . ."

Recently this court had occasion to consider what constitutes failure to "assume the duties of a parent" as that term is used in our adoption statute, K. S. A. 59-2102 (3), (*In re Waters,* 195 Kan. 614, 408 P. 2d 590). There, in speaking of the duties of a father who had visitation privileges with his children, the court stated:

"The duty of a parent goes further than mere support . . . A parent who over a period of five years makes no effort to see or talk to a child is in no position to claim he is fulfilling the duties of a parent." (p. 616.)

Our limited research discloses that K. S. A. 59-2102 (3) is *sui generis* in its language whereby consent is not required of a parent who "has failed or refused to assume the duties of a parent for two consecutive years." While nearly all states have adoption statutes containing a provision for dispensing with consent of a parent who has failed to fulfill his obligations in certain ways, their language varies greatly and none contains wording similar to the Kansas statute. (Simpson, *The Unfit Parent: Conditions Under Which a Child May Be Adopted Without Consent of His Parent,* 39 U. Det. L. J., 347-360.)

We have, however, discovered language of striking similarity to our statute in the English adoption statute of 1958, which provides, in substance, that the court may dispense with the consent of a parent or guardian if the court is satisfied that such person has

persistently failed, without reasonable cause, to "discharge the obligations of a parent" or guardian. (Adoption Act, 1958, 7 Eliz. 2, ch. 5.)

In the case of *In re P. (Infants)*, [1962], 1 Weekly L. R. 1296 (C. D.), the term "obligations of a parent" was construed to include not only the common-law or statutory duty to maintain a child in the financial or economic sense but also to include *the natural and moral duty of a parent to show affection, care and interest toward his child.* The court held that the natural mother's consent was unnecessary, notwithstanding the fact she had occasionally sent gifts, contributed some financial support, and had visited her children on three occasions during the three years next preceding the filing of the application for adoption.

An action growing out of an adoption proceeding under a statute rendering consent of a parent unnecessary, where he has wilfully deserted and neglected to provide proper care and maintenance for a child, was before the Supreme Court of Arizona in *Shumway v. Farley*, 68 Ariz. 159, 203 P. 2d 507. The facts were somewhat analogous to those of the instant case in that after a divorce action the father had only visitation rights with his minor child. The court, in its opinion, observed that even though custody be given the mother, the father has an inherent duty to contribute more than mere temporal necessities, and should be ever alert, where an opportunity presents itself, to guide, protect and shield his offspring. In discussing the father's rights and privileges yet remaining and not terminated by the decree in this type of a case, the court said:

". . . What is probably most important of all, if he has by a display of filial affection won the child's love and respect, he has the right to remain secure in the feelings and affections of his child, and, periodically at least, to enjoy its society. These rights may be voluntarily forfeited by inaction, *i. e.,* by his refusal or neglect to avail himself of the privileges that are his due. He loses such parental rights by his own actions and not by any act of the court.

"It appears to us that it cannot properly be said that a father, under these circumstances, has nothing which he can abandon, for certainly he does have many duties and priceless rights and privileges remaining to him which he can voluntarily give up or desert by a failure to discharge the correlative duties and obligations of parenthood." (pp. 164, 165.)

Appellee here argues she was exercising the only right given her by the court—that of visitation—and by that fact alone she was fulfilling her parental obligation. We are not impressed. We find

what was said in the above cases to be particularly opposite to the facts of the instant case.

Although a natural parent under a divorce decree is given only rights of visitation with minor children, we are not prepared to say that all the other privileges, duties and obligations of parenthood are thereby excluded. The simple acts whereby a parent many manifest normal affection, care and interest in a child are ordinarily not judicially proscribed. The door is left ajar for the parent to maintain the remaining thread of the parent-child relationship. The exercise of the right of visitation is only one of the many factors to be considered by the court in its ultimate determination. Under the facts as disclosed by the petitioner's evidence, it is difficult to imagine that a natural mother, although without the privilege of full custody, would be unmindful of important occasions in the lives of her children, and that she would be content to ignore them, particularly on holidays and birthdays. Neither does it appear she made any inquiry whatsoever about their welfare. Her reasons, if any, for such inaction may properly be considered by the court in support of her answer to the petition.

Ordinarily, the question of whether or not an individual has failed or refused to assume the duties of a parent for the required period of time is a factual one to be determined by the trier of facts upon competent evidence after a full and complete hearing. (*In re Waters*, supra.) For the reasons herein stated, the judgment of the district court is reversed and the case remanded with directions to proceed in a manner not inconsistent with this opinion.