(617 P.2d 114)
No. 51,067

BERNARD MICHAEL TREIBER, *Appellant,* v. JAN RISNER STONG, *Appellee.*

Opinion filed September 26, 1980.

*William T. Davitt,* of Wichita, for appellant.

*Susan Ellis,* of Wichita, for appellee.

Before FOTH, C.J., ABBOTT and REES, JJ.

ABBOTT, J.: This is a child custody dispute between the natural parents of an illegitimate child. There is no dispute concerning paternity.

The trial court awarded custody to the mother, Jan Risner, and the father, Michael Treiber, appeals. In order to understand the issues raised by the father, it is necessary to set forth, at least in part, the facts and the procedural history of this case as well as those in a separate adoption case that is *not* before this Court.

The parties lived together for four months and then went their separate ways. Unknown to either, Jan was pregnant when they ceased living together. Michael learned of Jan's pregnancy a few weeks before the child's birth and offered to marry her. She refused. He then offered to support Jan and the child or to take custody of the child. Jan gave birth to a baby girl on January 8, 1978. Jan signed a consent through a state approved adoption agency to allow a Wichita couple to adopt the child. The consent was specifically limited to the couple seeking the adoption; however, Jan did not know the name or address of the couple. Temporary custody was granted on January 10, 1978, to the prospective parents in the adoption proceedings and the child was delivered to them.

Unaware of either the birth of the child or the adoption proceeding, Michael filed a petition on January 11, 1978 (Case No. 78-D-131), seeking a restraining order to prevent the child being adopted and asking for custody of the child if the mother should wish to give it up. An ex parte order restraining Jan from placing the child for adoption was issued in the case. Michael next intervened in the adoption action and petitioned for temporary custody. A hearing was held on January 16, 1978, at which Michael's request for temporary custody was denied, and the trial judge ordered that temporary custody remain with the prospec-

tive adoptive parents. Jan filed a motion to dismiss the domestic relations case (No. 78-D-131), which motion was denied by the administrative judge on February 10, 1978, and it was ordered that all further proceedings take place in the adoption case (No. 78-A-13). A few days later, without notice to Michael, the prospective adoptive parents dismissed their petition for adoption and Jan was allowed to withdraw her consent. Custody of the child was granted to Jan and the adoption case was closed. That order was entered on February 16, 1978. The following day, Michael filed a petition in this Court for a writ of habeas corpus setting forth the facts that the consent had been withdrawn and the case dismissed. The petition was denied on February 24, 1978. No appeal was taken from the adoption proceeding. A petition for a writ of habeas corpus is not a substitute for a direct appeal and does not preserve the issues that could have been raised in a direct appeal; thus, several issues that Michael raises are not properly before this Court. Thereafter, custody remained with Jan. Michael made voluntary support payments and provided a policy of health insurance for the child.

On June 27, 1978, Michael married a woman who had a child by a prior marriage. Another child was born to them prior to further hearings in the case before us. On January 22, 1979, Jan married a member of the armed forces who was stationed in South Carolina. On January 29, 1979, she moved the court to dismiss the petition still on file in the domestic relations case so that the order restraining her from removing the child from the State of Kansas would be dissolved and she and the child could join her husband. Michael answered and requested permanent custody of the child. A study of the parties, their homes and the child was ordered by and presented to the trial court. The case was tried on April 23, 1979. The trial court found both parents to be fit, applied the standard of best interest of the child and awarded custody to Jan with reasonable rights of visitation to Michael. Michael appealed. After this appeal was filed, the child was turned over to Michael for an agreed upon visit that was to last until July 7, 1979. Jan and her husband were living in Texas, and a dispute arose as to whether Michael was to return the child to Texas or Jan was to return to Kansas to get the child. An accusation in contempt was filed against Michael and a hearing was held. The trial judge dismissed the citation for contempt,

established definite and certain visitation times, and provided for transportation expenses for visitation purposes. Each party was denied attorney fees and expenses. Michael then filed an amended notice of appeal.

The issues presented by Michael in his brief as we perceive them are as follows:

1. Did the mother waive her right to custody by consenting to the adoption? (Appellant also complains in the body of his argument about matters pertaining to the adoption proceeding from which he did not directly appeal.)

2. Did the court err in finding that it would be in the best interest of the child for her custody to be awarded to the mother?

3. Was the decision by the trial judge the product of his prejudice against Michael's attorney?

4. Did the trial judge who heard the accusation in contempt err in not ordering Jan to pay Michael's expenses and attorney fees incurred in defending the contempt citation, and in ordering that Michael pay all transportation costs for visitations and continue to pay child support during visitations?

Michael argues that the consent to adopt given by Jan was "irrevocable" under K.S.A. 59-2102; she therefore waived any right to the child and as the natural father he is entitled to custody as against the prospective adoptive parents. As we perceive the argument it is twofold; first, that the trial court erred in not giving Michael custody in the probate proceeding, and second, that Jan's consent to adoption permanently waived any right she had to custody of the child. As to the first argument, if the parental rights of a natural father of an illegitimate child have not been severed and those rights have been asserted by him, he has preference to custody of the child over prospective adoptive parents unless he has failed or refused to assume his parental duties for two consecutive years. *In re Lathrop,* 2 Kan. App. 2d 90, 575 P.2d 894 (1978); K.S.A. 59-2102(3). Regardless of what the merits were of the orders continuing temporary custody in the adoptive parents, such orders expired on February 16, 1978, when the trial judge dismissed the adoption action and placed custody in Jan. A direct appeal was not filed from that order, however, and the question of whether Jan or Michael should have been given temporary custody of the child when the prospective adoptive parents decided not to continue with the adoption proceedings and relinquished custody is now moot.

The effect of Jan having consented to the child's adoption by a third person is a viable issue. K.S.A. 59-2102 provides that a written, acknowledged consent to adoption, filed of record, is irrevocable unless prior to the final decree of adoption the consenting party alleges and proves that the consent was not freely and voluntarily given. See *Jones v. Jones,* 215 Kan. 102, 523 P.2d 743, *cert. denied* 419 U.S. 1032 (1974). Did the legislature intend that a natural parent lose forever all parental rights to a child if the adoption consented to is not completed? We think not. The purpose of the statute was to establish rules between the natural parent or parents and the prospective adoptive parents on when and under what circumstances a consent to adoption can be revoked. As we view the statute, the legislature neither contemplated nor intended for the consent to be irrevocable except as between the consenting natural parent and the prospective adoptive parent or parents.

Here, the consent was freely and voluntarily given to a specific adoption by a specific family. The prospective adoptive parents dismissed their adoption proceedings, abandoning their effort to adopt the child; and they did not object to Jan's withdrawal of her consent to the proposed adoption. The court having jurisdiction approved the adoption's dismissal and returned the child to Jan. No direct appeal was taken from that proceeding within the statutory period, and the order is final and conclusive and not now subject to collateral attack. *Jones v. Jones,* 215 Kan. 102, Syl. ¶ 6. In any event, the consent is binding only between the consenting parent and the prospective adoptive parents. As between the natural parents, a consent to adoption given by one of them to a third party is not binding on the other; however, in a custody dispute between the natural parents, the trial court may consider the fact that the mother gave her consent as evidence of her maternal attitude in determining the best interests of the child.

Michael argues that Jan abandoned the baby when she signed the consent and relinquished control of the child to the prospective adoptive parents. Other jurisdictions define abandonment of a child as conduct of a natural parent which renounces the parental relationship or as conduct of a parent which evinces a purpose to relinquish all parental claim to the child. *Winans v.*

*Luppie,* 47 N.J. Eq. 302, 304, 20 A. 969 (1890); *Davies Adoption Case,* 353 Pa. 579, 588, 46 A.2d 252 (1946); *In re Anonymous,* 80 N.Y.S.2d 839, 845 (Surr. Ct. 1947). Assuming that Jan did abandon the child, she subsequently revoked and terminated that abandonment and resumed her parental responsibilities. Her actions concerning the child and its placement for adoption were thoroughly explored by the trial judge and considered by him in determining the best interests of the child, and the trial judge's failure to find Jan had abandoned the child was not error.

The record shows that the parties perceived the custody proceeding to be a dispute between the natural parents of the child regarding what were the child's best interests, and it is our opinion that the trial court correctly resolved that question. The standard of what is in the best interest of the child is well stated in *Lewis v. Lewis,* 217 Kan. 366, Syl. ¶ 1, 537 P.2d 204 (1975):

"In determining the right to custody of children between parents the primary consideration is the best interests and welfare of the children and all other matters are subordinate thereto, and the judgment of the trial court on this issue should not be disturbed in the absence of an affirmative showing of abuse of discretion."

Here, both parents were found to be fit. The trial judge considered the evidence before him, including a report by a child custody investigator, and found that it was in the best interest of the child that custody be granted to Jan with reasonable visitation privileges to Michael. Upon appellate review, this Court accepts as true the evidence that supports or tends to support the findings in the trial court and disregards conflicting evidence or any inferences that may be drawn therefrom. When findings are attacked for insufficiency of evidence or as being contrary to the evidence, the duty of this Court is to determine whether there is sufficient evidence to support the findings; and if the evidence is sufficiently supported, the findings will not be disturbed on appeal. It is of no consequence there may have been adduced contrary evidence that would have supported different findings if it had been believed. *Highland Lumber Co., Inc. v. Knudson,* 219 Kan. 366, Syl. ¶ 4, 548 P.2d 719 (1976); *Bell v. Kent-Brown Chevrolet Co.,* 1 Kan. App. 2d 131, 134, 561 P.2d 907 (1977).

The question of custody is addressed to the sound judicial discretion of the trial court after consideration of all the facts and circumstances shown by the evidence, and on appellate review its decision will not be disturbed unless there is a clear showing of

an abuse of discretion. *Simmons v. Simmons,* 223 Kan. 639, 643, 576 P.2d 589 (1978); *Lewis v. Lewis,* 217 Kan. at 368.

Judicial discretion is abused when action taken by the trial judge is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only when no reasonable person would take the view adopted by the trial court. If reasonable people could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. It may thus be considered that all judicial discretion is exercisable only within the bounds of reason and justice in the broader sense, and it is abused only when it plainly overpasses those bounds. *Stayton v. Stayton,* 211 Kan. 560, 562, 506 P.2d 1172 (1973).

Our review of the record discloses substantial competent evidence to support the findings in the trial court, and we are unable to say that the court abused its discretion in awarding custody to the mother.

Michael's next argument is that Judge Helsel, who decided the custody issue, was prejudiced against Michael's attorney. The only argument contained in the brief on this point is a bald allegation of prejudice followed by two pages of transcript in the appendix of the brief concerning an encounter in an unrelated case between Judge Helsel and Michael's counsel. The case before us was decided and the decision announced on April 23, 1979. The incident reported in the transcript appears to have occurred on June 5, 1979. Although the journal entry had not as yet been approved when the incident occurred, the decision had been announced and was unchanged in the journal entry. The transcript from the unrelated case gives strong indication that some animosity had developed between Judge Helsel and counsel for Michael. Our review of the record in this case, however, does not indicate appellant was denied a fair trial. The comments and reasoning of *In re Adoption of Chance,* 4 Kan. App. 2d 576, 582, 609 P.2d 232, *rev. denied* June 20, 1980, are applicable to this case:

"It is next argued that appellant was deprived of a fair hearing before an impartial tribunal. The issues to be determined in this cause were factual in nature and obviously the court must be fair and impartial. See, *e.g., In re Estate of Millar,* 185 Kan. 510, 516, 345 P.2d 1033 (1959); *Harrison v. Harrison,* 48 Kan. 443, Syl., 29 Pac. 572 (1892). A judge has an ethical duty to be patient, dignified and courteous to litigants, lawyers, and others with whom he deals in his official

capacity, and to accord to every person legally interested in a proceeding or his lawyer full right to be heard according to law. Supreme Court Rule No. 601, Canons 3 A (3) and (4), 225 Kan. cxx. See *In re Sortor,* 220 Kan. 177, 551 P.2d 1255 (1976).

"While the extracted portions of the proceedings as reflected in appellant's brief indicate that perhaps the trial judge in the probate division was somewhat abrupt and perhaps not as patient as he might have been in some of his comments and rulings, our review of the entire record on appeal reveals that [appellant] has been granted a full and fair hearing on all of the issues presented."

Michael's complaints concerning the denial of attorney fees and costs, as well as the order concerning transportation costs for visitation and the continuance of child support at a reduced rate during summer visitation, were all matters within the sound discretion of the trial judge, the Honorable John E. Foulston, and when the record is viewed under our applicable scope of review, we are unable to say Judge Foulston abused the discretion vested in him.

Affirmed.