No. 50,844

In the Matter of the Adoption of BABY TRENT. VALERIE L. TRENT, *Appellee,* v. CARL HOOVER and JUDY HOOVER, *Appellants.*

(624 P.2d 433)

Opinion filed February 28, 1981.

*Donald E. Bucher,* of McDowell, Rice & Smith, of Kansas City, argued the cause and was on the brief for the appellants.

*Nancy R. Bikson,* of Kansas City, argued the cause, and *Robert W. Harris,* of Harris & Hills, of Kansas City, was with her on the brief for the appellees.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an adoption case which presents an issue as to whether the natural mother's consent to the adoption of her child is valid. The issue is a matter of first impression in our Kansas courts. We granted a petition for review of the judgment of the Court of Appeals which is published in 5 Kan. App. 2d 363, 616 P.2d 304 (1980). The Court of Appeals affirmed the trial court's order denying a minor child's adoption, holding that the natural mother's written consent was invalid for lack of authority in the notary, before whom the execution of the consent

was acknowledged. On review, we hold the lower courts erred in denying the adoption. The natural mother's written consent was in substantial compliance with Kansas adoption consent statute, K.S.A. 59-2102.

The child is the legitimate son of Valerie L. Trent (respondent-appellee) and her husband, Ronny L. Trent. The child was born July 25, 1978, in a Kansas City, Missouri, hospital. Mrs. Trent resides in Kansas City, Missouri; Mr. Trent resides in the Missouri State Penitentiary, Jefferson City, Missouri. Carl and Judy Hoover (petitioners-appellants) reside in Lenexa, Kansas.

About four months before the child's birth, the appellants learned of the natural mother's desire to place the expected child for adoption. The natural mother's sister, Vee Collins, and the appellant Judy Hoover's sister, Anna Ashe, initiated the discussions between the parties. The natural mother eventually telephoned the appellants, and told Judy Hoover the reasons why she was offering the child for adoption: the appellee was receiving welfare, and had financial problems; she already had one child; she had been taking Valium and Dilantin due to a health problem, which increased the probability of birth defects; and the child's father was a fugitive with incarceration pending.

Thereafter, the parties were in frequent contact with each other by telephone, and in contact separately with the appellants' attorney, Dan Duncan. Mr. Duncan advised the appellants to move to Kansas to facilitate the private adoption. The appellants then lived in Missouri, but moved to Kansas in June 1978. Mr. Duncan discussed details of the adoption with both the appellants, and the appellee. He explained to the appellee the requirements of parental consent. Initially, the appellee expressed doubts about the ability to obtain her fugitive husband's consent.

On Saturday, May 20, 1978, Mr. Duncan received a telephone call from the appellee who stated that her husband was available and willing to sign a consent to adoption. The Trents went to Duncan's office where Mr. Trent signed an undated consent form which was then notarized by Susan Schleicher, Duncan's secretary. The appellants arrived unexpectedly during this meeting, and were present when Mr. Trent signed the consent form.

On July 25, 1978, Valerie Trent was admitted to the Kansas City Osteopathic Hospital in Kansas City, Missouri. She gave birth to a healthy male child at approximately 9:30 p.m. The next morn-

ing, July 26, the appellee called the appellant, Judy Hoover, to announce the birth and her willingness to proceed with the adoption. Later that day, around 1:30 p.m., the appellee told the appellant Judy that she had changed her mind about the adoption. The appellant Judy called Mr. Duncan and told him of the appellee's announcement. Shortly thereafter, the appellee's mother called Mr. Duncan and told him the appellee wanted to check out of the hospital and had decided to sign the consent before leaving. A bit confused by these events, Mr. Duncan called the appellee, Valerie Trent, who told him she wanted to sign the consent to adoption.

Mr. Duncan, with his secretary, Susan Schleicher, a Kansas notary public, immediately went to the appellee's hospital room in Kansas City, Missouri. When they arrived the appellee's sister was present in the room. Mr. Duncan gave the appellee the consent form, along with several copies, which she signed. Ms. Schleicher then signed and notarized each form. Mr. Duncan informed the appellee she would not be required to appear in court and give consent in person; this was contrary to prior statements he had made to the appellee. A hospital social worker entered the room during this time and observed the appellee signing the consent forms.

At the time she signed the consent forms the appellee had been without sleep for approximately 26 hours. She had taken no strong pain-relieving medication because she had not yet signed the forms. The appellee testified that only two people pressured her to sign the consent forms—her mother, and a sister who lived in Washington. Neither of those persons was present in the hospital room when the appellee signed the consent to adoption. The appellee was discharged from the hospital within one hour after these events.

On July 27, 1978, the appellants filed their petition for adoption along with the written consent in the Johnson County District Court, and obtained an order granting them temporary custody of the child. The hospital released the child to the appellants and issued a birth certificate naming him Michael Dale Hoover.

On July 31, 1978, the appellee retained counsel and commenced a habeas corpus proceeding. The proceeding was dismissed about one week later. On August 9, 1978, the appellee filed a motion to dismiss the adoption proceedings. Hearings

were held on the adoption petition on September 27 and October 4, 1978. The trial court took the matter under advisement and on February 6, 1979, issued a memorandum decision denying the adoption. The trial court found the appellee's consent was voluntarily given, but invalid because it had not been acknowledged as required by law. The trial court ruled that it had no jurisdiction to grant the petition for adoption absent a valid consent. Appeal was timely filed, and on September 12, 1980, the Kansas Court of Appeals affirmed the opinion of the trial court.

The Court of Appeals held the consent was invalid because it was acknowledged in Missouri before a Kansas notary public. It held a Kansas notary public has no authority to act beyond the boundaries of Kansas. K.S.A. 1980 Supp. 53-101 and 53-107. The defect in the acknowledgment was not deemed a mere irregularity, hence the doctrine of substantial compliance with Kansas law was not applied by the Court of Appeals. The Court of Appeals rejected the appellants' argument that the consent was in substantial compliance with Missouri law and valid in a Kansas adoption proceeding. The Court of Appeals also rejected the appellants' plea for relief by equitable estoppel.

This court has never confronted before the specific issues raised by this case. After careful consideration of the various legal arguments and competing interests we conclude the doctrine of substantial compliance may appropriately be applied to the facts of this case. K.S.A. 59-2102 explains who must consent to a minor child's adoption and the manner in which the consent should be given. The first paragraph of the statute states, in pertinent part:

"Before any minor child is adopted, consent must be given to such adoption:
"(1) by the living parents of a legitimate child . . . ."

The statute's second paragraph states:

"In all cases where the child sought to be adopted is over fourteen (14) years of age and of sound intellect, the consent of such child must be given. Consent in all cases shall be in writing. Whenever consent of a parent or parents is necessary it shall be acknowledged and may be acknowledged before the judge of a court of record, and when such consent is acknowledged before such a judge it shall be final and may not thereafter be revoked by the person or persons giving the same. In all other cases the written consent shall be acknowledged before an officer authorized by law to take acknowledgments, and when such consent has been given in writing and has been filed of record in the district court, the same shall be irrevocable, unless the consenting party or parties, prior to final decree of adoption, allege and prove that such consent was not freely and voluntarily given. The

burden of proof shall rest with the consenting party or parties. Minority of a parent shall not invalidate his or her consent."

The appellee has referred us to our prior decisions interpreting K.S.A. 59-2102(3), wherein we have stated that the provisions of the adoption statutes must be strictly construed in favor of maintaining the rights of natural parents in controversies involving termination of the parent-child relation. *In re Adoption of Harrington,* 228 Kan. 636, 638, 620 P.2d 315 (1980); *In re Sharp,* 197 Kan. 502, 504, 419 P.2d 812 (1966). We are cognizant that the consent by the natural parents to the adoption of their child, where required by statute, is regarded as an essential requisite to jurisdiction on the part of the court to render a valid decree of adoption. *In re Adoption of Harrington,* 228 Kan. at 638, and cases cited therein.

The fundamental rule of statutory construction, to which all other rules are subordinate, is that the purpose and intent of the legislature governs when that intent can be ascertained from the statutes. In determining legislative intent the court may properly look to the purpose to be accomplished, and the necessity and effect of the statute. *State ex rel. Stephan v. Lane,* 228 Kan. 379, Syl. ¶ 11, 614 P.2d 987 (1980), and cases cited therein.

The purpose and necessity of a written consent is to insure that the natural parent freely and voluntarily consents to the adoption. In Kansas, a written consent filed in the district court becomes irrevocable absent proof that the consent was not freely and voluntarily given. K.S.A. 59-2102 requires acknowledgment of the consent before a judge of a court of record or an officer authorized by law to take such acknowledgments. The acknowledgment serves as *prima facie* proof of the validity of the consent, and the identity of the signer. The acknowledgment also serves as *prima facie* proof that the written consent was freely and voluntarily given. K.S.A. 59-2102 specifically states that the burden of proving the absence of free and voluntary consent will be on the consenting party or parties.

Historically, an acknowledgment has reference only to the proof of execution and not to the force of the instrument between the parties thereto. *Tawney v. Blankenship,* 150 Kan. 41, 47, 90 P.2d 1111 (1939), and cases cited therein. An acknowledgment shows, merely *prima facie,* that an instrument was duly executed. *D. J. Fair Lumber Co. v. Karlin,* 199 Kan. 366, 369, 430 P.2d 222

(1967). See 1 Am. Jur. 2d, Acknowledgments §§ 1, 4, 81. Certificates of acknowledgment should be liberally construed and protected from attack if there has been substantial compliance with statutory requirements. See *Mathewson, Administrator v. Richards,* 114 Kan. 500, 220 Pac. 185 (1923); 1 Am. Jur. 2d, Acknowledgments § 40.

The decision of *Foley v. Carnesi,* 123 Colo. 533, 232 P.2d 186 (1951), cited by the Court of Appeals, is not dispositive of the issue we face in interpreting the Kansas statute. In *Foley,* there were two *equally valid* reasons to deny the adoption. The adoption petition was accompanied by an informal letter of consent from the natural mother. The letter of consent had not been acknowledged by a notary public and *there had been no attempt to obtain any manner of official acknowledgment.* The second basis for denying the adoption petition was because the natural mother had not been given due process notice of the adoption proceedings. As a minor, the natural mother could not waive notice.

The Uniform Recognition of Acknowledgments Act, K.S.A. 53-301 *et seq.,* discusses the requisites and meaning of notarial acts. K.S.A. 53-305(3)(*i*), states that the words "acknowledged before me" mean, in the case of a natural person, that he or she executed the instrument for the purpose stated in the instrument. The substantial equivalent of the words "acknowledged before me" were contained in the consent signed by Valerie Trent. K.S.A. 53-304(3).

The record established before the trial court leaves no question that the written consents were freely and voluntarily given in the instant case. The written consent signed by Valerie Trent stated:

"IN THE DISTRICT COURT OF JOHNSON COUNTY, KANSAS
PROBATE DEPARTMENT

In THE MATTER
OF THE ADOPTION OF                    Case No. A-4691
BABY TENT [*sic*]                         Pursuant to Chapter 59

"CONSENT TO ADOPTION

"The undersigned, being the mother of a minor child of the age of one day, hereby freely and voluntarily consents that Carl Hoover and Judy Hoover, being husband and wife, may adopt the said minor child as their own.

"Further, the undersigned waives any additional notice of hearing and consents to this matter being heard expeditiously and at the Court's convenience.

"Dated and signed this 26th day of July, 1978.

/s/
Valerie Trent

"STATE OF KANSAS ) ss:
COUNTY OF WYANDOTTE )

"BE IT REMEMBERED, that on this 26th day of July, 1978, before me, the undersigned, a Notary Public in and for the county and state aforesaid, personally appeared Valerie Trent who is personally known to me to be the natural mother, the person who executed the foregoing Consent to Adoption, and stated that she has read it, understood its purpose, and executed it voluntarily.

"IN WITNESS WHEREOF, I have set my hand and notarial seal the day and year above written.

/s/_____
Notary Public"

In its thorough and well-written memorandum decision the trial court concluded:

"At the signing of the consent document of Mrs. Trent on July 26, 1978, respondent freely and voluntarily affixed her signature to a document that is clear and concise in its language and import. There is substantial evidence that respondent was acting under preliminary advice of counsel that was in error concerning the import of the document signed. The history of Kansas law on this element of the case reveals the following:

"Prior to July 1, 1968, a consent given in acknowledged form could be withdrawn by the consenting party prior to the court taking final action on the petition. *In re Thompson,* 178 Kan. 127.

"Subsequent to July 1, 1968, a consent given in writing and acknowledged before an officer authorized by law to take acknowledgements was irrevocable from that time forward unless the consenting party proved the consent was not freely and voluntarily given. K.S.A. 59-2102, as amended.

"The statute does not say the consenting party must knowingly give the consent. It might be argued that voluntarily implies an aspect of knowledge of essential facts. Further argument might be made under K.S.A. 53-305(3)(i) the execution of the instrument was for a purpose that the consenting party misunderstood. Both of these arguments are sufficiently rebutted by indisputable facts in this case:

"1) Mrs. Trent was not making a decision to consent that she had not given ample and sufficient consideration to, and

"2) the document itself is clear and concise; it can hardly be said to be meant to deceive or trick Mrs. Trent into divesting herself of her parental rights. I conclude the document was freely and voluntarily signed by Mrs. Trent."

In *Riley v. Byrne,* 145 Mont. 138, 399 P.2d 980 (1965), natural parents appealed from the denial of a petition to set aside an adoption decree. The natural parents complained of fraud and duress in the inducement to sign written consents, and argued the consents had never been acknowledged as required by statute. R. C. M. 1947, 61-205 (now Mont. Codes Ann. 40-8-111) pro-

vided, in pertinent part, that consents "shall be acknowledged before an officer authorized to take acknowledgments, or witnessed by a representative of the state department of public welfare or of an agency, or witnessed by a representative of the court." The consents had not been acknowledged or witnessed by any state official or court representative, but the Montana Supreme Court nevertheless held:

"In the case before us, the consents of the natural parents were obtained without observing the necessity of acknowledgment. Thereafter, these natural parents instituted judicial proceedings which afforded them a full hearing upon all issues bearing upon the voluntariness of their consents and the adoption proceedings generally. To deny the validity of a decree of adoption for lack of acknowledgment when the natural parents have fully exercised those rights which such acknowledgment was designed to protect would, we think, reach a result contrary to the spirit of our adoption statutes. This result is in harmony with decisions of other courts which have considered similar questions." 145 Mont. at 145.

The appellant cites *Jones v. Jones,* 215 Kan. 102, Syl. ¶ 12, 523 P.2d 743, *cert. denied* 419 U.S. 1032 (1974), for the proposition that a consent executed and acknowledged in substantial compliance with Missouri law would be valid in Kansas. Given our interpretation of the Kansas statute, we conclude the interpretation and effect of Missouri law is immaterial in the instant case. Nevertheless, the facts of the decision in *Jones v. Jones,* 215 Kan. at 103-10, 117, demonstrate the fundamental importance of a written consent in proving the free and voluntary relinquishment of parental rights.

The appellee argued before the trial court and the Court of Appeals that the written consent given by Ronny Trent was invalid, having been signed prior to birth of the child. The trial court declined to deny the adoption on that basis, stating *inter alia* that the facts clearly indicated the consent was freely and voluntarily given. The trial court also questioned the natural mother's legal standing to challenge the validity of a written consent given by the natural father. At no time has the natural father joined in the legal proceedings herein.

The adoption consent statute, 59-2102, does not state that either natural parent may attempt to revoke a consent freely and voluntarily given by the other parent. In *Treiber v. Stong,* 5 Kan. App. 2d 392, 396, 617 P.2d 114, *rev. denied* 228 Kan. 807 (1980), the Court of Appeals stated that "[a]s between the natural parents, a

consent to adoption given by one of them to a third party is not binding on the other." We can find no basis upon which the natural mother can challenge a separate legal instrument executed by the natural father. We decline to address the trial court's conclusion that consent to adoption cannot be given for an unborn child.

The judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and the case is remanded with direction to grant the petition for adoption.

FROMME, J., dissenting: The majority of this court have abandoned their judicial role of interpreting the law and have stepped into a legislative role of amending what heretofore were mandatory requirements of two different legislative enactments, *i.e.,* K.S.A. 1980 Supp. 53-101, limiting the authority of notaries public; and K.S.A. 59-2102, requiring a consent to adoption to be acknowledged before a notary public.

The first statute authorizes the Secretary of State to appoint notaries public, who may perform notarial acts "in any part of this state." This limits their jurisdiction to this state. These public officers are considered of such importance to the citizens of this state that they are required to execute and file oaths of office and bonds conditioned for the faithful performance of all notarial acts in accordance with law. Again it should be noted their authority to act as notaries is limited to the confines of the State of Kansas.

The majority, speaking for this court, condones and approves acts performed in Missouri by a Kansas notary public in direct violation of the limits of authority specified in K.S.A. 1980 Supp. 53-101. Such acts in Missouri are in direct violation of the notary's faithful performance of law requirements in K.S.A. 1980 Supp. 53-102, for which the notary filed an oath and bond. Such unauthorized acts by a Kansas notary performed outside the state can have no more validity than the acts of any other citizen of this state who might witness the execution of that same instrument in Missouri.

The second statute, K.S.A. 59-2102, relates to requirements imposed by the legislature for a valid consent to adoption. The pertinent statute says the consent by a parent "shall be acknowledged before an officer authorized by law to take acknowledg-

ments." The consent in the present case was signed in Missouri. The person assuming the ostensible role of a notary in this case was not authorized to take acknowledgments in Missouri. The majority hold the consent and the acknowledgment were valid based upon some new theory referred to as "substantial compliance." The rule of "substantial performance" is recognized and applied in the field of contract law. It should not be extended and used to ascertain when there has been compliance with an otherwise mandatory statute.

The application of such a theory in determining compliance with a statute has the effect of repealing the statute by permitting a court to disregard the requirements of that statute. This is a legislative prerogative. Such a rule will create confusion and litigation over clear, concise and mandatory statutes.

In this case it may appear there was but a slight deviation from the requirements of these statutes. The attorney's secretary merely crossed over a state line to acknowledge an instrument, and this was in the same metropolitan area where the attorney had his office. However, the effect of this court's decision, when followed to its logical conclusion, is to permit that same notary to acknowledge any legal instrument in any state of the union, be it Maine or California.

The majority opinion makes bad law. The decision of both the district court and the court of appeals should be affirmed. I respectfully record a dissent.

PRAGER, J., joins the foregoing dissenting opinion.