(142 P.3d 327)
No. 96,003

In the Matter of the Adoption of X.J.A., A Minor Child Born
12-21-2003.

Opinion filed September 15, 2006.

*J. Scott Koksal*, of Lindner & Marquez, of Garden City, for appellant natural mother.

*Glenn I. Kerbs*, of Dodge City, for appellee.

Before JOHNSON, P.J., ELLIOTT and BUSER, JJ.

JOHNSON, J.: The natural mother (Mother) of X.J.A. appeals the district court's grant of a decree of adoption to M.A. and E.M., specifically challenging the denial of her motion to revoke her consent to adoption and the granting of an adoption upon a joint petition by two unmarried persons. Finding that the acknowledgment of the consent to adopt failed to substantially comply with the Uniform Law on Notarial Acts, resulting in an impermissible shifting of the burden of proof to the Mother, we reverse.

In the spring of 2003, the 24-year-old Mother discovered she was pregnant. At the time, Mother had a young daughter, and they lived with the natural father of X.J.A. After the natural father left, Mother was forced to leave her home and move in with a neighbor, G.A.A.

G.A.A.'s sister, M.A., and her common-law husband, E.M., had been unsuccessfully attempting to have a child. Mother had discussions with M.A. and E.M. about their adopting the child she was expecting. Conflicting testimony was presented as to whether Mother ultimately agreed to the adoption. Mother contends that she simply agreed for M.A. and E.M. to care for the child until Mother could recuperate, commence working, and make arrangements to care for the child herself. The adoptive parents and their family members testified that Mother agreed that M.A. and E.M. would adopt the child.

The child was born on December 21, 2003. During her hospital stay, Mother told a nurse that the child was not being given up for adoption. Mother left the hospital on December 23, but the newborn child remained hospitalized. The following day, Mother signed a consent to adoption form given to her by M.A., albeit no one explained the form's content to Mother. The evidence was conflicting as to Mother's level of comprehension of the English language, although no one else present was apparently able to read or understand the content of the form. When M.A. returned the signed form to her attorney, he advised that the parent's signature was to be acknowledged before a notary public. M.A. then took the form to a notary public and convinced the notarial officer to execute the notary's portion of the acknowledgment without Mother being present.

The newborn was given a name, X.J.A., which was proposed by the adoptive mother, M.A. Upon discharge from the hospital, X.J.A. went home with M.A. and E.M. However, Mother enrolled X.J.A. in the Special Supplemental Nutrition Program for Women, Infants, and Children, obtained State of Kansas health insurance for X.J.A., and took X.J.A. to two medical appointments and for vaccinations in early 2004. Mother and X.J.A. had periodic visits until May 2004, when M.A. and E.M. discontinued the visits because of Mother's attempt to take custody of the child. Apparently, Mother's new boyfriend had encouraged her to regain custody of the child.

On October 19, 2004, Mother filed a motion to withdraw her consent to the adoption. As noted, conflicting testimony was pre-

sented to the district court. Additionally, a forensic document examiner opined that the signature on the consent form was that of the Mother. Mother also acknowledged that the signature appeared to be hers.

The district court found that the evidence established that it was Mother's signature on the consent form, "even though not signed in the presence of a notary public." The district court found that the content of the form was sufficient to conform with the sample consent authorized in K.S.A. 59-2143. After noting Mother's claim that the consent had not been signed in accordance with the Uniform Law on Notarial Acts, K.S.A. 53-501 *et seq.*, the district court opined that "[i]t would be patently unjust if the purpose of the notarial requirement for consents to adoption (to attest a free and voluntary consent) was defeated by a notarial officer's failure to comply with the signature requirements where the signature is in fact genuine." The district court relied on the holding in *In re Adoption of Trent*, 229 Kan. 224, Syl. ¶ 4, 624 P.2d 433 (1981), stating that substantial compliance with statutory requirements is sufficient. Ultimately, the district court concluded:

"The facts presented in the present matter establish a regret on the part of the natural mother for giving a consent to adoption, but the facts do not indicate the consent was coerced, and the natural mother failed to establish that the consent was not given freely and voluntarily, and therefore, the adoption should proceed."

In appealing that decision, Mother presents three issues: (1) Did the district court err by recognizing and applying the doctrine of "substantial compliance" to K.S.A. 59-2114?; (2) Is the district court's denial of the natural mother's motion to revoke consent to adopt supported by substantial competent evidence?; and (3) Did the district court err by granting a decree of adoption upon the joint petition of two unmarried persons?

## SUBSTANTIAL COMPLIANCE

First, the Mother challenges the district court's finding that the consent to adopt was in substantial compliance with the requirements of K.S.A. 59-2114(a). Interpretation of a statute is a question of law, and an appellate court's review is unlimited. An appellate

court is not bound by the district court's interpretation of a statute. *Cooper v. Werholtz*, 277 Kan. 250, 252, 83 P.3d 1212 (2004).

K.S.A. 59-2114(a), our statute specifically addressing a parent's consent to adoption, provides:

"Consent shall be in writing and shall be acknowledged before a judge of a court of record or before an officer authorized by law to take acknowledgments. If consent is acknowledged before a judge of a court of record, it shall be the duty of the court to advise the consenting person of the consequences of the consent. A consent is final when executed, unless the consenting party, prior to final decree of adoption, alleges and proves by clear and convincing evidence that the consent was not freely and voluntarily given. The burden of proving the consent was not freely and voluntarily given shall rest with the consenting party."

Initially, we note that appellant does not challenge the district court's finding that the content of the consent form contained sufficient information. At the time in question, K.S.A. 59-2129(d) (Furse 1994) directed that a parental consent was to be in substantial conformity with the exemplar contained in the appendix of forms following K.S.A. 59-2143 (Furse 1994). The district court found the consent used here substantially conformed with the statutory sample form.

Mother does not concede that she actually signed the consent form presented to the district court. However, the evidence was sufficient to support the district court's finding that it was Mother's signature on the consent form.

The controversy centers on the 59-2114(a) statutory requirement that the consent "shall be acknowledged" and, ultimately, on whether the consent was freely and voluntarily given. Under the Uniform Law on Notarial Acts, an " '[a]cknowledgment' means a declaration by a person that the person has executed an instrument for the purposes stated therein." K.S.A. 53-502(b). "In taking an acknowledgment, the notarial officer must determine, either from personal knowledge or from satisfactory evidence, that the person appearing before the officer and making the acknowledgment is the person whose true signature is on the instrument." K.S.A. 53-503(a). "A notarial act must be evidenced by a certificate signed and dated by a notarial officer." K.S.A. 53-508(a). "By executing a certificate of a notarial act, the notarial officer certifies that the

officer has made the determinations required by K.S.A. 53-503."
K.S.A. 53-508(c).

Appellees do not dispute that Mother did not personally appear before or make the statutory declaration to the notary public who executed the certificate of acknowledgment. However, they urge us to find, as the district court did, that there was substantial compliance with the Uniform Law on Notarial Acts because Mother's consent was freely and voluntarily given.

Mother argues that her consent was invalid under the plain language of K.S.A. 59-2114(a) because it was not, in fact, acknowledged. She suggests that the district court's reliance on *Trent* to find substantial compliance with K.S.A. 59-2114(a) was misplaced, due to factual distinctions. Thus, we perceive some confusion in the briefs as to which statutes the doctrine of substantial compliance is to be applied: the laws governing notarial acts or the laws governing adoptions. We interpret *Trent* as applying the substantial compliance doctrine to the notarial acts statutes.

In *Trent*, an attorney and his secretary, who was a Kansas notary public, went to the natural mother's hospital room in Kansas City, Missouri. The mother signed, and the secretary notarized a consent to adoption form. When the mother subsequently challenged the validity of her consent in the adoption proceedings, the district court found that the mother's consent had been voluntarily given. However, the trial court found that the consent was nevertheless invalid because the secretary had no authority to act as a notary public in the State of Missouri.

The *Trent* majority recited that the Court of Appeals had affirmed the district court, finding the consent invalid because the Kansas notary public had no authority to act beyond the boundaries of the State of Kansas. The opinion noted that the Court of Appeals had found that the defect in the acknowledgment was not a mere irregularity and, therefore, it had not applied the doctrine of substantial compliance. The Kansas Supreme Court, in a split decision, reversed and remanded with directions for the district court to grant the adoption. 229 Kan. at 232.

*Trent* involved an earlier statute governing consent, K.S.A. 59-2102 (Weeks 1976), but the relevant language of that statute re-

mains substantively the same in K.S.A. 59-2114(a). The majority opinion in *Trent* began by reciting that the fundamental rule of statutory construction is that the purpose and intent of the legislature is to govern and that "[i]n determining legislative intent the court may properly look to the purpose to be accomplished, and the necessity and effect of the statute." 229 Kan. at 228. The court then opined:

"The purpose and necessity of a written consent is to insure that the natural parent freely and voluntarily consents to the adoption. In Kansas, a written consent filed in the district court becomes irrevocable absent proof that the consent was not freely and voluntarily given. K.S.A. 59-2102 [now K.S.A. 59-2114] requires acknowledgment of the consent before a judge of a court of record or an officer authorized by law to take such acknowledgments. The acknowledgment serves as *prima facie* proof of the validity of the consent, and the identity of the signer. The acknowledgment also serves as *prima facie* proof that the written consent was freely and voluntarily given. K.S.A. 59-2102 specifically states that the burden of proving the absence of free and voluntary consent will be on the consenting party or parties.

"Historically, an acknowledgment has reference only to the proof of execution and not to the force of the instrument between the parties thereto. *Tawney v. Blankenship*, 150 Kan. 41, 47, 90 P.2d 1111 (1939), and cases cited therein. An acknowledgment shows, merely *prima facie*, that an instrument was duly executed. *D. J. Fair Lumber Co. v. Karlin*, 199 Kan. 366, 369, 430 P.2d 222 (1967). See 1 Am. Jur. 2d, Acknowledgments §§ 1, 4, 81. Certificates of acknowledgment should be liberally construed and protected from attack if there has been substantial compliance with statutory requirements. See *Mathewson, Administrator v. Richards*, 114 Kan. 500, 220 Pac. 185 (1923); 1 Am. Jur. 2d, Acknowledgments § 40." 229 Kan. at 228-29.

The opinion's syllabus sets forth the majority's holding:

"In an appeal from a trial court's refusal to grant a decree of adoption, it is *held*: A consent to adoption executed in substantial compliance with statutory requirements is valid under K.S.A. 59-2102 in view of subsequent judicial proceedings which were instituted by the natural mother and which afforded her a full hearing upon all issues bearing upon voluntariness of her consent." 229 Kan. 224, Syl. ¶ 4.

That holding appears to rely on two elements: (1) the consent to adopt was executed in substantial compliance with the statutory requirements of the law governing notarial acts; and (2) the natural mother was afforded an opportunity to fully litigate whether her

consent was freely and voluntarily given. What is unclear is whether a full hearing on the issue of voluntariness would suffice, if the consent was not in substantial compliance with the law of notarial acts.

We note that the *Trent* majority cited to and quoted from *Riley v. Byrne*, 145 Mont. 138, 145, 399 P.2d 980 (1965), in which the Montana Supreme Court upheld an adoption decree where the parental consents had not been acknowledged or witnessed, but where the parents had " 'a full hearing upon all issues bearing upon the voluntariness of their consents.' " 229 Kan. at 231 (quoting *Riley*, 145 Mont. at 145). In *Riley*, there was no suggestion of any attempt to comply with the laws governing acknowledgments, much less substantial compliance. *Trent*'s reliance on *Riley* may signal that the Supreme Court would uphold an adoption after a full hearing on voluntariness, even in the absence of a substantially compliant acknowledgment.

On the other hand, the *Trent* opinion recites the contents of the consent form and quotes the district court's finding that " '[a]t the signing of the consent document of Mrs. Trent on July 26, 1978, respondent freely and voluntarily affixed her signature to a document that is clear and concise in its language and import.' " 229 Kan. at 230. After stating the meaning of the words "acknowledged before me," the *Trent* majority declared that "[t]he record established before the trial court leaves no question that the written consents were freely and voluntarily given in the instant case." 229 Kan. at 229. Apparently, the court was influenced by the fact that the consenting mother had actually made the requisite declaration required by notarial laws, albeit to a notary public who was not authorized to act at the place of declaration. The *Trent* majority appears to have found that the averments in the certificate of acknowledgment were true, *i.e.*, that the mother had read the consent form, understood its purpose, and executed it voluntarily.

We perceive a problem with construing *Trent* to permit an adoption decree based solely upon the parent being accorded a hearing on the issue of voluntariness without the existence of an acknowledgment that is in substantial compliance with the Uniform Law of Notarial Acts. K.S.A. 59-2114(a) provides that a consent is final

when executed unless the consenting parent "alleges and proves by clear and convincing evidence that the consent was not freely and voluntarily given." Thus, at the "full hearing" to which *Trent* referred, the parent carries the burden of proof. Below, the district court concluded that "the natural mother failed to establish that the consent was not given freely and voluntarily," indicating that the district court followed the statutory burden-shifting.

As a practical matter, the district court's ruling effected a termination of Mother's parental rights in and to X.J.A. Previously, this court discussed the constitutionality of shifting the burden of proof to the parent in a termination of parental rights case. See *In re J.L.*, 20 Kan. App. 2d 665, 891 P.2d 1125, *rev. denied* 257 Kan. 1092 (1995). *In re J.L.* discussed procedural due process in general and the specific liberty interests of a parent. The opinion noted that a natural parent's right to the custody of his or her children is a fundamental right protected by the Fourteenth Amendment to the Constitution of the United States. 20 Kan. App. 2d at 670. Therefore, one who seeks to terminate the relationship between a parent and child must do so by fundamentally fair procedures which meet the requisites of due process. Accordingly, *In re J.L.* found that a presumption of unfitness which shifted the burden of proof to the parent violated that parent's procedural due process rights. 20 Kan. App. 2d at 676. However, *In re J.L.* found that the statute creating the burden-shifting presumption could be constitutionally construed if the district court determined that the presumption arose from facts that had probative value as evidence of the existence of the presumed fact. 20 Kan. App. 2d at 676-82. In other words, the State had to present a prima facie showing that the facts that supported the earlier termination were still relevant to whether the parent was currently unfit.

In that vein, the burden-shifting provision of K.S.A. 59-2114(a) does not run afoul of procedural due process only because of the requirement that the parent's consent must be acknowledged. As *Trent* stated, "[t]he acknowledgment also serves as *prima facie* proof that the written consent was freely and voluntarily given." 229 Kan. at 228. Therefore, the parent's statutorily imposed burden is to refute the prima facie case for voluntariness established

by the valid acknowledgment. However, we do not believe that an acknowledgment which does not substantially comply with the law of notarial acts can establish the requisite prima facie case. Without the prima facie showing via a substantially valid acknowledgment, the parent must, in the first instance, bear the burden of proving that his or her fundamental liberty interest should not be taken. Pursuant to the rationale of *In re J.L.*, that burden shifting would violate the parent's right to procedural due process.

The district court found that Mother's consent to adopt was not signed in accordance with the Uniform Law on Notarial Acts, K.S.A. 53-501 *et seq*. We agree. Mother did not sign in the presence of the notary and did not make the declaration which defines the term "acknowledgment." The notary public did not make the determination required by K.S.A. 53-503. Perhaps most importantly, the evidence is uncontroverted that the certificate of acknowledgment is, in all material respects, false and untrue.

Granted, the district court found that the consent form contained Mother's signature. However, the district court recognized that the question remained as to whether, in signing the form, Mother was freely and voluntarily giving her consent to the adoption of her child. It resolved that question by weighing the disputed evidence presented at the hearing and finding that Mother had failed to establish that her consent was not given freely and voluntarily.

Perhaps a full hearing on whether a parent's signature on the consent form manifested a free and voluntary consent to the adoption would be a constitutionally permissible alternative to the statutory acknowledgment requirement if the proponents of the unacknowledged consent had the burden of proof. Here, we perceive that the district court might well have reached the same result, even if it had required M.A. and E.M. to carry the burden of proof. That perception entices us to consider a remand for a determination of whether the adoptive parents proved voluntariness, as opposed to the finding that Mother failed to prove the absence of a free and voluntary act. However, to do so we would have to rewrite a clear and plainly worded statute that specifically assigns the burden of proof to the consenting party. We feel constrained to do so,

notwithstanding where the equities might lie in this case. See *Leaming v. U.S.D. No. 214*, 242 Kan. 743, 761, 750 P.2d 1041 (1988) (Herd, J., dissenting) ("Result-oriented justice is government of men and not of law, directly contrary to the concept of the rule of law.").

To summarize, we interpret *Trent* as requiring a consent to adoption that contains an acknowledgment which is in substantial compliance with the Uniform Law on Notarial Acts in order to establish prima facie proof that the written consent was freely and voluntarily given. Such prima facie evidence is necessary to shift the burden to the parent to prove by clear and convincing evidence that the consent was not freely and voluntarily given. Where the parent does not appear and sign before and make the requisite declaration to the notarial officer, and the officer executes a false certificate of acknowledgment, there has not been a substantial compliance with the Uniform Law on Notarial Acts. Accordingly, we reverse.

## SUBSTANTIAL EVIDENCE

Mother also contends that the district court's finding that her consent was freely and voluntarily given was not supported by substantial competent evidence. Our holding on the first issue makes a discussion of the evidence unnecessary. We do note that Mother's arguments invite us to impermissibly reweigh the evidence and assess witness credibility. Further, given the statutory shift of the burden of proof to Mother, the district court made a negative finding that Mother did not sustain her burden. We would not disturb such a finding absent proof of an arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. See *In re Adoption of Baby Girl T.*, 28 Kan. App. 2d 712, 719-20, 21 P.3d 581, *rev. denied* 271 Kan. 1036, *cert. denied* 534 U.S. 976 (2001).

## MARITAL STATUS OF ADOPTIVE PARENTS

Mother also challenged whether an adoption could be granted jointly to two unmarried adults, because K.S.A. 59-2113 says that "any adult, or husband and wife jointly, may adopt." Again, we

need not delve into an interpretation of that statute, given our reversal on the first issue. Likewise, the district court found that M.A. and E.M. had a common-law marriage and that finding was supported by the evidence. Thus, Mother's statutory argument is doubly moot.

Reversed.